**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: ELK CROSS TIMBERS DECKING MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Civil Action No.: 15-18 (JLL) <br> MDL No.: 2577 <br><br> **OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion to dismiss (ECF No. 60 ("GAF Mot.") the Omnibus Amended Complaint ("OAC") (ECF No. 15) pursuant to Federal Rule of Civil Procedure 12(b)(6) by Building Materials Corporation of America d/b/a GAF Materials Corporation ("GAF"). Jurisdiction is premised upon 28 U.S.C. § 1332(d). (*See* OAC ¶ 36.) No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. After considering the submissions of the parties in support of and in opposition to the instant motion, GAF's motion to dismiss is granted in part and denied in part.

## I.    BACKGROUND

### A.    General Allegations

Plaintiffs bring the instant putative class action individually and on behalf of all owners of GAF Elk Cross Timbers and/or DuraLife Decking (collectively "Decking"), "a non-natural wood product made from manufactured composite wood." (*Id.* ¶¶ 1, 2.) At all times relevant to this litigation, GAF, a Delaware corporation with its principal place of business located in Wayne, New Jersey, has been in the business of manufacturing,

marketing, and selling exterior building products in North America, including Decking. (*Id.* ¶¶ 8-10.) Plaintiffs allege, generally, that the Decking is "defective in design and manufacture," which results in cracking, warping, swelling, mold, discoloration, twisting, and shrinking. (*See, e.g.*, *id.* ¶¶ 44-50, 74.) Plaintiffs also allege that GAF knew or should have known about these defects but failed to disclose the defects to its consumers. (*Id.* ¶¶ 73-75).

Plaintiffs further allege, that despite GAF's knowledge of the defects, it misrepresented and warranted that the Decking was a superior product knowing that customers would rely on these misrepresentations. (*Id.* ¶¶ 76, 79-81, 86.) Specifically, Plaintiffs allege that "GAF made the following representations in conjunction with the sale of its Decking, each of which were intended to (and did) convey information regarding the durability and performance of the Decking, rather than mere puffery:"

> a. The Decking's "superior engineering and design creates a deck that lasts longer than ordinary woods decks with less maintenance—no staining or sealing required."
> b. The Decking "won't warp, crack, splinter or rot like wood."
> c. The Decking "[r]esists scratching and high traffic wear and tear."
> d. The Decking "resists sagging, splintering, warping, insects and rotting."
> e. The Decking contains "[n]o toxic chemicals like treated wood."
> f. "For the beauty of a wooden deck with less care and effort, chose Elk Cross Timbers brand composite decking [viz., the Decking]."
> g. The Decking "is designed with the EZ-Build System, which not only makes construction a snap, but also adds beauty with its concealed fasteners hidden below the surface."
> h. "No matter what your design goals are, you can rely on [the Decking] to give you the lasting, quality deck of your dreams, with little time and effort."

(*Id.* ¶ 85 (alteration in original).)

### B.      Individual Plaintiff Allegations

The OAC sets forth factual allegations for twenty-five (25) sets of Plaintiffs (either as an individual or as a couple).  (*See id.* ¶¶ 11-35.)  The allegations in the ***amended*** omnibus complaint for the individual Plaintiffs are mostly cut and paste allegations providing only the most basic information.  With minor tweaks in some instances, the individual allegations follow the below format:

> Plaintiff [insert name] is an [insert state] citizen who resides in [insert town, state]. [Insert name] purchased and installed Decking on [his/her/their] home in [insert time frame]. On [insert date], [insert name] initially filed a Complaint in the United States District Court of the [insert court]. Within a year prior to filing the Complaint, [name/he/she/they] discovered that the Decking is defective and must be replaced, and that any other property damage caused by the Decking must be repaired. [1]

For example, the allegations for Ken Burger are:

> Plaintiff Ken Burger ("Burger") is an Ohio citizen who resides in Cincinnati, Ohio. Mr. Burger purchased and installed Decking on his home in the summer of 2010. On June 19, 2014, Burger initially filed a Complaint in the United States District Court of the Southern District of Ohio. Within a year prior to filing his initial Complaint, Burger discovered that the Decking is defective and must be replaced, and that any other property damage caused by the Decking must be repaired.

(*Id.* ¶ 11.)  And the essentially identical allegations for Frederick and Veronica Robertie are:

> Plaintiffs Frederick and Veronica Robertie ("Robertie") are North Carolina citizens who reside in Bolivia, North Carolina. The Roberties purchased and installed Decking on their home in January/February, 2009. On August 13, 2014, the Roberties initially filed a Complaint in the United States District

---

[1] That there are some cut and paste allegations in the OAC where there are twenty-five (25) Plaintiff fact sets is not itself noteworthy.  However, when the cut and paste allegations, which provide only the most basic information, comprise most, if not all, of the individual allegations, it is noteworthy.  The Court recognizes that there may exist causes of action where individual detail is not necessary.  That is not the case for many of the causes of action asserted by Plaintiffs, as discussed throughout this Opinion.

> Court of the Eastern District of North Carolina. Within a year of filing the Complaint, they discovered that the Decking is defective and must be replaced, and that any other property damage caused by the Decking must be repaired.

(*Id.* ¶ 12.)   For these two Plaintiffs, and others like them, these are the only specific allegations made, as opposed to general allegations made by "Plaintiffs."

Sixteen (16) of the twenty-three (23) remaining Plaintiff fact sets[2] further allege, in only a cursory one sentence or clause manner, that based upon "GAF's marketing" or its "representations" or the "quality" of the Decking that the Plaintiff "believed that the Decking was superior to other decking boards" or that they bought the decking because of the representations/marketing/quality.  The allegations related to such representations are as follows:

- **Ross**: "Based upon GAF's marketing, at the time of purchase, Ross believed that the Decking was superior to other decking boards."  (*Id.* ¶ 13.)

- **Sheridan**: "Based upon GAF's marketing, at the time of purchase, Sheridan believed that the Decking was superior to other decking boards in the industry and would require limited maintenance."  (*Id.* ¶ 14.)

- **Denton**: "Mr. Denton purchased and installed Decking on his home in July, 2008 based upon the representations regarding the quality of the Decking."  (*Id.* ¶ 15.)

- **Hoover & Cohen**: "They purchased and installed Decking on their home in July, 2007 based upon the representations regarding the quality of the Decking."  (*Id.* ¶ 16.)

- **Warren**: "Mr. Warren purchased and installed Decking on his home in the spring/summer of 2008 because of the representations regarding the quality of the Decking."  (*Id.* ¶ 18.)

- **Narducci**: "Mr. Narducci purchased and installed Decking on his home in the spring/summer of 2008 based upon the quality and ease of use of the Decking." (*Id.* ¶ 19.)

---

[2] Plaintiffs Montante and the Benders have since been voluntarily dismissed from the case. (*See* ECF Nos. 51, 58 (respectively).)

- **Ernst**: "Mr. Ernst purchased and installed Decking on his home in the summer of 2007 based upon the representations regarding the quality of the Decking." (*Id.* ¶ 21.)

- **Turcheck**: "Mr. Turcheck purchased and installed Decking on his home in the spring of 2006 based upon the representations regarding the quality of the Decking." (*Id.* ¶ 23.)

- **Stidham**: "Mr. Stidham purchased and installed Decking on his home in the summer of 2008 based upon the representations regarding the quality of the Decking." (*Id.* ¶ 25.)

- **Williams**: "Mr. and Mrs. Williams purchased and installed Decking on their home in August, 2008 based upon the representations regarding the quality of the Decking." (*Id.* ¶ 26.)

- **Wolcott**: "Mr. Wolcott purchased and installed Decking on his home in July, 2006 based upon the quality of the representations regarding the Decking." (*Id.* ¶ 27.)

- **Khanna**: "Mr. Khanna purchased and installed Decking on his home in the winter and spring of 2009 based upon representations regarding the quality of the Decking." (*Id.* ¶ 29.)

- **Giovannetti**: "Mr. Giovannetti purchased and installed Decking on two separate areas of his home in July, 2009 and again in November 2009 based upon the representations regarding the quality of the Decking." (*Id.* ¶ 30.)

- **Shepherd**: "Mr. Shepherd purchased and installed Decking on his home in 2007 based upon the representations regarding the quality of the Decking." (*Id.* ¶ 32.)

- **Barker**: "Mr. Barker purchased and installed Decking on his home in 2006 based upon the representations regarding the quality of the Decking." (*Id.* ¶ 34.)

  **Megerle**: "Megerle purchased and installed Decking on her home in 2008 based upon the representations regarding the quality of the Decking." (*Id.* ¶ 35.)

None of these individuals allege any other facts regarding the representations or GAF's marketing materials with respect to their Decking purchases. Only Plaintiff McGovern adds any more detail to his allegations. He alleges that:

> Plaintiff Thomas McGovern ("McGovern") is an Indiana citizen and a resident of Fort Wayne, Indiana. Through a contractor, Mr. McGovern purchased and installed Decking on his vacation home in Mackinac Island, Michigan during June and July of 2008. By the summer of 2010, Plaintiff

> noticed that the Decking had separated due to expansion of the boards. Plaintiff also noticed that the Decking had become stained with mold and mildew. This required the Decking to be reconfigured and rebuilt using the existing boards. Plaintiff also had to scrub each board with bleach to get the mildew and resultant stains off before rebuilding. Despite Plaintiff's efforts, the Decking remains unsightly, warped, and stained. He has since discovered that the Decking is inherently defective and must be replaced, and that any other property damage caused by the Decking must be repaired. McGovern initially filed an action against GAF in this Court on August 21, 2014. Before filing that case, Plaintiff submitted a pre-suit demand to Defendant. Defendant has not paid all costs, labor, and damages associated with replacing the Cross Timbers Decking.

(*Id.* ¶ 17.)

Twenty-one (21) of the twenty-three (23) remaining Plaintiffs' complete individual allegations are seven (7) or fewer lines of the OAC. (*See id.* ¶¶ 11-27, 29-32, 34-35.) There are no other allegations specific to each Plaintiff in the OAC; rather, the remaining factual allegations are framed as "Plaintiffs" without differentiation.

### C.    Photographs as Factual Allegations

In the OAC, Plaintiffs included photographs for thirteen (13) of the twenty-three (23) remaining Plaintiffs. (*See id.* ¶¶ 51-65.) GAF argues that such "[p]hotographs are not factual allegations" that should be considered when determining the sufficiency of the pleading. (*See* GAF Mot. at 19-20.) Plaintiffs counter that unlike the cases cited by GAF where the "purpose of including many of the photographs . . . is unclear," here that is not the case because "Plaintiffs included an allegation that the photographs were a true and accurate representation of the respective Plaintiff's Decking." (Pls.' Opp'n at 9 n.7.) Plaintiffs miss the point. GAF is arguing that—without more—they cannot ascertain "what any of those pictures supposedly shows," and without such information, the photographs do not provide additional factual information. (GAF Reply at 2.) The Court agrees.

First, there is no information as to when the photos were taken. Second, although

the Court could guess from some of the pictures what Plaintiffs are attempting to show, it is *Plaintiffs* who must actually make the allegations. Third, for some of the pictures, the Court cannot even guess (were that the standard—which it is not) what the Plaintiffs are attempting to show. Thus, while the Court does not take issue with the inclusion of the photographs in the OAC, without a description of what Plaintiffs are attempting to show through the photographs (beyond that some of the Plaintiffs have some kind of decking), the photographs do not add anything useful for the Court's analysis.

## II.   THE MOTION TO DISMISS

The OAC asserts twenty-eight (28) claims on behalf of twenty-five (25) Plaintiff fact sets. The named Plaintiffs in the OAC are from sixteen (16) different states. After GAF served its moving brief on May 20, 2015, Plaintiff Montante's claims were voluntarily dismissed. (ECF No. 51.) Plaintiff Montante was the only Plaintiff from Pennsylvania. The Benders' claims were also voluntarily dismissed. (ECF No. 59.) The Benders were from Iowa (*see* OAC ¶ 33); other Plaintiffs from Iowa remain in the case. After these dismissals and given the different state substantive laws that must be applied to the state law claims (*see infra* Section III), the OAC asserts approximately 139 different causes of action.[3] GAF purports to move to dismiss the OAC in its entirety. (*See* GAF Mot. at 4.)

The parties were afforded special briefing for the present motion. The parties each received eleven (11) weeks to prepare the moving and opposition briefs, and GAF was

---

[3] The Court uses the term "claim" to refer to Plaintiffs' "Counts," such as "Negligence," as identified in the OAC. It uses the term "cause of action" to refer to the specific legal cause of action being brought—for example, a negligence claim under Michigan law on behalf of one or more plaintiffs.

given forty-five (45) days to prepare and serve its reply.  (*See* ECF No. 47.)  Additionally, the parties were permitted to file moving and opposition briefs of fifty-five (55) pages each, and a reply of twenty (20) pages.  (*See* ECF No. 41.)  The parties both—very helpfully—submitted an exhibit with each brief containing a summary chart of the bullet point arguments related to each cause of action.  The Court accepted these additional exhibits and has used them along with the briefs in considering the submissions.

By way of Plaintiffs' opposition, Plaintiffs conceded GAF's choice of law arguments, which GAF had presented in nine and a half pages of briefing.  (*See* Pls.' Opp'n at 8 n.6; ECF No. 61-1 (Pls.' Args. in Opp'n to GAF's Mot. to Dismiss ("Pls.' Checklist")); GAF Mot. at 8-17.)  Plaintiffs also did not oppose GAF's motion to dismiss numerous individual causes of action.[4]  (*See* ECF No. 61-1 (Pls.' Checklist).)[5]  As a result, Plaintiffs did not need to use their opposition to address these conceded arguments.  Additionally, because the Pennsylvania causes of action were dismissed after GAF's briefing, but before Plaintiffs' opposition was due, Plaintiffs did not need to respond to GAF's arguments related to the Pennsylvania law causes of action.  Thus, Plaintiffs had the full fifty-five (55)

---

[4] The claims for which Plaintiffs are unopposed to dismissal are: Count 1 (Negligence-Stidham and Mapp); Count 2 (Indiana Consumer Protection Statute-McGovern); Count 3 (New Jersey Consumer Fraud Act-All Plaintiffs); Count 12 (Ohio Consumer Sales Practices Act-Burger); Count 21 (Breach of Implied Warranties-Williams, Denton, Sheridan, Ross, Khanna, Giovannetti, Wolcott); Count 23 (Fraudulent Misrepresentation-Stidham); Count 25 (Magnuson-Moss Warranty Act-Williams, Denton, Sheridan, Ross, Khanna, Giovannetti, Wolcott, only to the extent that these causes of action arise from their breach of implied warranty causes of action); Count 26 (Strict Products Liability-Stidham, Denton, Sheridan, Claxton, McGovern, Narducci, Mapp, Giovannetti, Shepherd, Burger, Wolcott); Count 27 (Unjust Enrichment-Claxton, McGovern, Narducci).  (*See* ECF No. 61-1 at 1, 3-7 (Pls.' Checklist).) These claims, therefore, are dismissed with prejudice.

[5] Exhibit 1, attached to this Opinion identifies the causes of action in the OAC that were either conceded by Plaintiffs or have been voluntarily dismissed.  Exhibit 1 follows the OAC; the parties' checklists do not in all respects.

pages of briefing to respond to a much smaller subset of arguments than were briefed by GAF.

Although the Court commends the parties' efforts to address all the issues, the Court does require that a party actually address an issue that it either is purportedly moving on or opposing. The Court cannot and will not consider arguments in the abstract separated from the specific claim at issue unless the party can demonstrate that the elements of the particular claim are somehow irrelevant to the argument being made. Such abstract arguments improperly attempt to make the Court an attorney for the parties. The Court thus will only consider arguments and related law presented by the parties, both of whom are well-represented.

Likewise, the Court finds citations to cases analyzing state law, that are not the state law at issue, unhelpful without some explanation for how such law is relevant. For example, there are no Plaintiffs from New Jersey and the parties agree that New Jersey substantive law does not apply to any claim. (*See infra* Section III.) Yet, both parties revert for some arguments to citations to Third Circuit and District of New Jersey cases analyzing New Jersey substantive law. (*See, e.g.*, GAF Mot. at 42; Pls.' Opp'n at 42-43.) There are even citations to New Jersey statutes in support of some arguments. (*See, e.g.*, Pls.' Opp'n at 38 (citing N.J.S.A. 12A:2-719(2)).)

The Court finds it acceptable to not list all elements of every single cause of action if GAF is moving related to arguments regarding only one or some of the elements. But GAF must, at a minimum, identify the element at issue and cite to cases analyzing relevant state law in support of its argument. And Plaintiffs, in opposition, must respond with relevant state law for each state moved on. Both GAF and Plaintiffs cited to a plethora of

state law using single space string cite footnotes in support of limited body text.  (*See, e.g.*, GAF Mot. at 25 n.15; Pls.' Opp'n at 34 n.41.)  The Court has accepted such citations for purposes of this motion even though they effectively extended the page limits as ordered by this Court.  Especially given this, failure to provide specific state law on an issue— which both parties demonstrated could be done in little space—is not acceptable.

For these reasons, the Court has treated GAF's motion as a partial motion to dismiss as GAF has not specifically moved on each cause of action.[6]  Likewise, where Plaintiffs chose not to brief an issue for a specific state in opposition, that issue has been treated as unopposed, unless a general appropriate argument in opposition was made.

Finally, for many, if not most, of the individual causes of action, GAF makes multiple, alternative arguments for dismissal, generally for failure to plead what it argues is a required element of the cause of action.  While the Court need not reach alternative arguments once it has determined that a cause of action should be dismissed on another basis, the Court is mindful that the OAC will be amended, that there likely will be another motion to dismiss, and that there is parallel briefing presently underway in a related matter.  Therefore, in the interests of judicial efficiency and case management, the Court has considered the failure to plead arguments where specifically addressed by the parties.  If, however, a cause of action is dismissed *with prejudice* on one basis, the Court has not

---

[6] The Court finds that GAF has failed to move on specific causes of action in three ways: (1) the cause of action is not included on the checklist or argued anywhere in the brief (*see, e.g.*, ECF No. 60-2 (GAF's Checklist of Args. ("GAF's Checklist")) (Negligence for Montana)), (2) GAF "moves" simply by claiming "all plaintiffs" fail "to plead with particularity" without citing to the relevant state law elements and explaining how any element has not been met (*see, e.g.*, *id.* ("All Causes of Action," Negligent Misrepresentation, Fraudulent Misrepresentation)), or (3) GAF does not provide any law or analysis related to a specific state cause of action (*see, e.g.*, *infra* Section V.B.6).

considered alternative arguments.

With this background, the Court turns to the parties' arguments.

**III.   CHOICE OF LAW**

GAF argues that the law to be applied to Plaintiffs' state claims is the substantive law of the state where each Plaintiffs' decking was installed.  (*See* GAF Mot. at 8-17.) However, with respect to whether those claims are properly pled, GAF argues that federal procedural law of the Third Circuit applies.  (*Id.* at 17.)  "Plaintiffs agree with GAF that the substantive laws of the Plaintiffs' state where the Decking was installed applies."  (Pls.' Opp'n at 8 n.6.)  They also agree that "[r]egarding matters of procedure, the transferee court must apply federal law as interpreted by the court of the district where the transferee court sits."  (*Id.*)

Therefore, the parties agree on the choice of law to be applied, and this Court will apply the substantive law where the decking was installed.  Table 1 below identifies the substantive law to be applied to the state law claims of the current named plaintiffs.

TABLE 1

| Plaintiffs | Applicable State Law |
|---|---|
| Ken Burger (OAC ¶ 11) | Ohio |
| Frederick & Veronica Robertie ("Robertie") (*Id.* ¶ 12) | North Carolina |
| John Ross (*Id.* ¶ 13) | Missouri |
| Chad Sheridan (OAC ¶ 14) | Iowa |
| Charles Denton (*Id.* ¶ 15) | Iowa |
| Robert Hoover & Judy Cohen ("Hoover & Cohen") (*Id.* ¶ 16) | Montana |
| Thomas McGovern (*Id.* ¶ 17) | Michigan |
| Harrison Warren (*Id.* ¶ 18) | Nebraska |

| | |
|---|---|
| Michael Narducci (*Id.* ¶ 19) | Michigan |
| Leanne Claxton (*Id.* ¶ 20) | Michigan |
| Jeff Ernst (*Id.* ¶ 21) | Illinois |
| Dorothy Kaiser (*Id.* ¶ 22) | Colorado |
| Dennis Turcheck (*Id.* ¶ 23) | Colorado |
| Christine Tuthill (*Id.* ¶ 24) | Colorado |
| John Stidham (*Id.* ¶ 25) | Indiana |
| Arnold and Cathy Williams ("Williams") (*Id.* ¶ 26) | California |
| James Wolcott (*Id.* ¶ 27) | Virginia |
| Samir Khanna (*Id.* ¶ 29) | New Hampshire |
| Mark Giovannetti (*Id.* ¶ 30) | New York |
| Donna and Johnathan Mapp ("Mapp") (*Id.* ¶ 31) | Mississippi |
| John Shepherd (*Id.* ¶ 32) | North Carolina |
| Paul Barker (*Id.* ¶ 34) | Colorado |
| Michele Megerle (*Id.* ¶ 35) | Colorado |

After concessions and the voluntary dismissals, approximately 119 causes of action remain for the Court's consideration.

## IV.   LEGAL STANDARDS.

### A.   Standards

Under Rule 8(a), for a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).  But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqba*l, 556 U.S. at 678.  Thus, "a plaintiff's obligation to provide the grounds

of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Burtch*, 662 F.3d at 220 (quoting

*Twombl*y, 550 U.S. at 555) (alteration in *Twombly*).

> Pursuant to Federal Rule of Civil Procedure 9(b):
>
> [A] plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged.  To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal quotations and

citations omitted, alteration in original).  Thus, where fraud is alleged, this heightened

pleading standard must be met.  Furthermore, in class action cases, each "individually

named plaintiff must satisfy Rule 9(b) independently" so "[t]he complaint should therefore

contain sufficient detail as to [a named plaintiff's] claims to apprise [a defendant] of that

plaintiff's exact grounds for relief and the specific conduct that plaintiff charges."

*Pacholec v. Home Depot USA, Inc*., 2006 WL 2792788, *2 (D.N.J. Sept. 26, 2006)

(alteration in original); *see also Crozier v. Johnson & Johnson Consumer Cos., Inc.*, 901

F. Supp. 2d 494, 506 (D.N.J. 2012) (same).

### B.    Applicable Standard for Plaintiffs' Claims

GAF argues that the heightened pleading standards of Rule 9(b) apply to most of

Plaintiffs' remaining state consumer protection claims (Counts 2, 4-10, 13-14, 16-19).  (*See*

GAF Mot. at 25 & n.15.)  GAF also argues that Rule 9(b) applies to Plaintiffs' claims of

negligent misrepresentation (Count 22), fraudulent misrepresentation (Count 23), and

fraudulent concealment/omission (Count 24).  (*Id.* at 20-21.)

Plaintiffs do not contest that Rule 9(b) applies to their California and Colorado

consumer protection claims (Counts 9, 16-17), but they do dispute that it applies to its other consumer protection claims.  (Pls.' Opp'n at 10-12.)  Plaintiffs' also contest that Rule 9(b) applies to their negligent misrepresentation causes of action.  (*Id.* at 10.)

### 1. State Consumer Protection Claims

GAF asserts that "[t]he Third Circuit and this Court have held that Rule 9(b) applies not only to common law misrepresentation claims but also to state statutory consumer protection claims pled in federal court."  (GAF Mot. at 25 (citing *Frederico*, 507 F.3d at 200; *Glauberzon v. Pella Corp.*, 2011 WL 1337509, at *8 (D.N.J. Apr. 7, 2011); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526 (D.N.J. 2008).)  The Court first notes that GAF concedes that Rule 8(a) applies to Plaintiffs' New York consumer protection claim (Count 15).  (*See id.* at n.15.)  Thus, if GAF believed that the Third Circuit had ruled that Rule 9(b) applied to ***all*** state consumer protection claims—without regard to the actual requirements of the state cause of action—it would not have conceded that Rule 8 applies to the New York claim.   In fact, application of federal procedural law does not mean that the underlying state law is irrelevant.  Very recently, the Third Circuit clearly made this point.  *See In re Asbestos Prods. Liab. Litig.*, 611 F. App'x 86 (3d Cir. 2015) (unpublished).  The Third Circuit stated:

> Federal Rule of Civil Procedure 8(a) requires a plaintiff to allege sufficient facts to put the defendant on "fair notice of what the . . . claim is and the grounds upon which it rests." [*Twombly*, 550 U.S. at 555.]  ***We must look to state law, however, to define "what the . . . claim is."***
>
> As the District Court recognized, Illinois is a "two disease" state, meaning that each asbestos-related disease gives rise to a cause of action with a separate statute-of-limitations period.  ***Taken together, federal procedural law and Illinois substantive law*** thus required Plaintiffs to plead sufficient facts to support their lung-cancer claims separately from their nonmalignancy claims [regardless of how state courts require them to be pled].

*Id.* at 89-90 (other internal citations omitted, emphasis added).

Similarly, where this Court has previously held that Rule 8(a) applies to New York consumer protection claims under § 349—*see Wiseberg v. Toyota Motor Corp.*, 2012 WL 1108542 at *4 (D.N.J. Mar. 30, 2012) (a case cited by GAF, *see* GAF Mot. at 26 n.15)—it cited to a Second Circuit case, which engaged in an analysis similar to that of the Third Circuit above.  *See id.* (citing *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)).  In *Pelman*, the Second Circuit reasoned that "***because § 349 extends well beyond common-law fraud*** to cover a broad range of deceptive practices, ***and because a private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud***, an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b)."  *Pelman*, 396 F.3d at 511 (internal citations omitted, emphasis added).  For these reasons, the Court disagrees with GAF that it is appropriate to apply a blanket approach to whether the heightened pleading standards of Rule 9(b) apply without reference to the specific state law at issue.

Plaintiffs argue that "[i]n addition to New York, formulaic compliance with Rule 9(b) is not required for the purpose of pleading consumer protection claims in Indiana, Michigan, Missouri, Illinois, Virginia, North Carolina, Ohio, Nebraska, Iowa, Montana or New Hampshire."   (Pls.' Opp'n at 11-12 (citing to law analyzing the statutes at issue).) Plaintiffs concede that Rule 9(b) applies to the consumer protection claims for California and Colorado.  (*Id.* at 12.)  Thus, the parties agree that Rule 8(a) applies to Plaintiffs' New York consumer protection claim (Count 15), and that Rule 9(b) applies to Plaintiffs' California and Colorado consumer protection claims (Counts 9, 16-17).  However, they disagree on the appropriate pleading standard for the other state consumer protection

claims.

Although GAF relied primarily on its general Third Circuit argument, it did provide a footnote with case citations for the specific contested states.  (*See* GAF Mot. at 25-26 n.15.)  Therefore, the Court has considered this issue for all of the contested states.  Because the cases cited by both parties raise state specific issues, the Court has addressed which standard is appropriate in the consumer protection discussion section (*see infra* Section V.B.) related to the specific state consumer protection claims.

2.    Negligent Misrepresentation Causes of Action

Both parties argue in the abstract with respect to whether Plaintiffs' negligent misrepresentation claims for fourteen (14) states must meet the heightened pleading standards of Rule 9(b).  GAF argues that "[t]his heightened pleading standard applies not only to fraudulent misrepresentation claims but also to negligent misrepresentation claims."  (GAF Mot. at 21 (citing *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 532 (D.N.J. 2011) (analyzing New Jersey law).)  Plaintiffs, on the other hand, argue that "all states do not require pleading negligent misrepresentation in satisfaction of Rule 9(b)" using a "*see, e.g.*" cite for cases regarding only two (Colorado and New York) of the state laws at issue.  (Pls.' Opp'n at 10 & n.10.)

The Court does not view GAF to have properly raised this issue for any state, or Plaintiffs to have properly raised that Rule 8 should be applied, except by example.  GAF has not properly moved to dismiss any of Plaintiffs' negligent misrepresentation causes of action for failure to meet either pleading standard as it has not pointed to any of the relevant state's requirements as compared to Plaintiffs' allegations.  Therefore, the Court will not reach this issue at this time.  The Court does note that simple citation to *District 1199P* will

be insufficient to establish that the Third Circuit (and hence this Court) would apply Rule 9(b) to all the negligent misrepresentation causes of action.  The Court also notes that the two cases cited by Plaintiffs argue against application of Rule 9(b) for those states.  *See Conrad v. Educ. Res. Inst.*, 652 F. Supp. 2d 1172, 1183 (D. Colo. Aug. 13, 2009) ("The theory of liability for negligent misrepresentation is one of negligence, rather than of intent to mislead.  Thus, a claim for negligent misrepresentation should not be governed by the pleading standards set forth in Rule 9(b).") (internal citations omitted); *In re LILCO Sec. Litig.*, 625 F. Supp. 1500, 1504 (E.D.N.Y. 1986) ("Negligent misrepresentation is not a claim that necessitates the particularized pleading of Rule 9(b).").

## V.      DISCUSSION

### A.      GAF's Arguments That Certain Causes of Action Are Time Barred

#### 1.      Untimely as a matter of law

GAF argues that "many of Plaintiffs' claims are untimely."  (GAF Mot. at 26.) Specifically, GAF argues that the following causes of action are time barred *as a matter of law*: breach of implied warranties cause of action (Count 21) under Illinois law and the negligence (Count 1), UDTPA (Count 10), negligent misrepresentation (Count 22), fraudulent misrepresentation (Count 23), fraudulent concealment (Count 24), and unjust enrichment (Count 27) causes of action[7] for North Carolina (Plaintiff Shepherd only).  (*See id.* at 35, 54.)

**Illinois (Count 21).**  "The statute of limitations for breach of implied warranties [under Illinois law] (Count 21) is four years from 'when tender of delivery is made.'"  (*Id.*

---

[7] Plaintiffs do not oppose dismissal of Plaintiff Shepherd's strict liability cause of action. (*See* ECF 61-1 at 7 (Pls.' Checklist).)

at 35 (quoting 810 Ill. Comp. Stat. 5/2-725).)  Additionally, "[t]he statute runs from the time of ***delivery*** of the good, regardless of when the defect is discovered—that is, the 'discovery rule' does not apply in claims for breach of implied warranty."  *Karpowicz v. General Motors Corp.*, 1997 WL 285943 at *5 (N.D. Ill. May 23, 1997) (citing 810 ILCS 5/2–725(1)) (emphasis added).  Plaintiffs do not respond to this argument in opposition. (*See* Pls.' Opp'n at 25-34.[8])  The OAC alleges that Plaintiff Ernst "purchased and installed Decking on his home in the summer of 2007," and that he "initially filed a Complaint in the United States District Court of the Northern District of Illinois" on August 19, 2014, approximately seven (7) years later.  (OAC ¶ 21.)  Therefore, the Court finds that Plaintiff Ernst's breach of implied warranty claim is time barred on the face of the OAC, and, therefore, this cause of action is dismissed with prejudice.

**North Carolina (Plaintiff Shepherd only) (Counts 1, 10, 22-24, 27).**[9]  For these causes of action, the parties dispute the applicable statute of limitations.  GAF argues that "[f]or claims alleging injury from a product and accruing before October 1, 2009, North Carolina's statute of repose is 'six years after the date of initial purchase for use or consumption.'"  (GAF Mot. at 35 (quoting N.C. GEN. STAT. § 1-50(a)(6) (2009), *repealed by* § 1-46.1).)  Plaintiffs, on the other hand, argue that "[t]he applicable statute is N.C. GEN. STAT. § 1-46.1, which became effective October 1, 2009, and applies a twelve year statute of repose to claims accruing on or after that date."  (Pls.' Opp'n at 33.)  Plaintiffs further

---

[8] The only Illinois case cited by Plaintiffs, *Beaudette by Beaudette v. Illinois Indus. Comm'n*, 719 N.E.2d 191, 192-93 (Ill. Ct. App. 1999), did not address the statute at issue or address the discovery rule.

[9] GAF only moved that the North Carolina breach of implied warranty cause of action was time barred ***as pled***.  (*See* GAF Mot. at 33.)

argue that "§ 1-46.1 applies because Plaintiff Shepherd's claims did not *accrue* until after October 1, 2009." (*Id.* (emphasis added) (citing *Schenkel & Shultz, Inc. v. Hermon F. Fox & Assoc., P.C.*, 636 S.E.2d 835, 840 (N.C. Ct. App. 2006) and *New Bern Assoc., v. Celotex Corp.*, 87 N.C. App. 65, 70, *disc. rev. denied*, 321 N.C. 297 (1987), for the proposition that the "accrual" date is the date of discovery).)

Plaintiffs' cases do not analyze the causes of action at issue. *See Schenkel*, 636 S.E.2d at 839 ("[A] statutory 'discovery rule' offers a claimant additional time in *certain* contract or negligence actions to have the opportunity to discover the harm before *the three-year statute of limitation*s begins to accrue.") (citing, *e.g.*, N.C. GEN. STAT.§ 1-52(16) (2005) ("for personal injury or physical damage to claimant's property") (emphasis added) and N.C. GEN. STAT.§ 1-15(c) (2005) ("a cause of action for malpractice")); *New Bern*, 87 N.C. App. at 70 ("A cause of action for physical damage to property accrues when the physical damage becomes 'apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs.'") (quoting N.C. GEN. STAT. § 1-52(16)). Instead, Plaintiffs use these cases to argue that the action "accrued" only when Plaintiff Shepherd discovered the defect, which he alleges to have been after October 1, 2009. (*See* Pls.' Opp'n at 33-34; OAC ¶ 32.) However, Plaintiffs' conclusion with respect to the appropriate date of "accrual" is drawn from the plain language of the statutes at issue in the cases Plaintiffs cite, not from the statute that they argue applies here.

Section 1-52(16), cited in Plaintiffs' cases, provides:

Within three years an action— . . . (16) Unless otherwise provided by law, for personal injury or physical damage to claimant's property, the cause of action, except in causes of actions referred to in G.S. 1-15(c), *shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant*, whichever event first occurs. . . .

(emphasis added).  Section 1-15(c) provides:

> (c) Except where otherwise provided by statute, a cause of action for
> malpractice arising out of the performance of or failure to perform
> professional services ***shall be deemed to accrue at the time of the
> occurrence of the last act of the defendant giving rise to the cause of
> action***: Provided that whenever there is bodily injury to the person,
> economic or monetary loss, or a defect in or damage to property which
> originates under circumstances making the injury, loss, defect ***or damage
> not readily apparent to the claimant at the time of its origin, and the
> injury, loss, defect or damage is discovered or should reasonably be
> discovered by the claimant*** two or more years after the occurrence of the
> last act of the defendant giving rise to the cause of action, suit must be
> commenced within one year from the date discovery is made: Provided
> nothing herein shall be construed to reduce the statute of limitation in any
> such case below three years. Provided further, that in no event shall an
> action be commenced more than four years from the last act of the defendant
> giving rise to the cause of action. . . .

(emphasis added.)  In comparison, § 1-46.1, which Plaintiffs argue is applicable here (and

which came into effect October 1, 2009), provides:

> Within 12 years an action—(1) No action for the recovery of damages for
> personal injury, death, or damage to property based upon or arising out of
> any alleged defect or any failure in relation to a product shall be brought
> more than 12 years ***after the date of initial purchase*** for use or
> consumption.

(emphasis added).  The plain language of §1-46.1 does not comport with Plaintiffs' view

of when the cause of action "accrued" in this case.  Section 1-46.1's predecessor, § 1-

50(a)(6), provided a six, not twelve, year limitations period from the purchase date.  *See

Patterson v. McKinley Med., L.L.C.*, 2011 WL 1260145, at *1 (E.D.N.C. Mar. 30, 2011).

In a North Carolina case analyzing the statutes at issue here—§ 1-50(a)(6) versus §

1-46.1, the court agreed "that the applicable statute of repose is N.C. Gen. Stat. § 1-

50(a)(6), which was in effect at the time Plaintiff ***purchased*** the allegedly defective

product." *See Lackey v. DePuy Ortho., Inc.*, 2011 WL 2791264, at *2 (W.D.N.C. July 14,

2011) (emphasis added); *see also Patterson.,* 2011 WL 1260145 at n.1 ("The amending legislation [for § 1-46.1] states: This act becomes effective October 1, 2009, and applies to causes of action that accrue on or after that date . . . .") (internal quotations omitted).  The *Lackey* court further held that § 1-50(a)(6) "functions as an 'unyielding and absolute barrier' to claims brought more than six years after the product at issue was purchased." *Lackey*, 2011 WL 2791264, at *3 (quoting *Nat'l Property Investors, VIII v. Shell Oil*, 950 F. Supp. 710, 713 (E.D.N.C. 1996).  Thus, the *Lackey* court held that "[i]n sum, N.C. Gen. Stat. § 1–50(a)(6) set the fixed time limit at six years from the time of the product's sale or delivery beyond which DePuy cannot be liable for a product sold in 1998."  *Id.* at *4 (holding that the purchase date for a defective prosthetic hip controlled which limitations period applied).

Plaintiff Shepherd alleges that he "purchased and installed Decking on his home in 2007."  (OAC ¶ 32.)  Therefore, § 1-50(a)(6), the statute in effect at the time of his purchase, applies.  Because he purchased the decking more than six (6) years prior to bringing suit, Plaintiff Shepherd's negligence, UDTPA, negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, and unjust enrichment causes of action are time barred, and will be dismissed with prejudice.

2.   Untimely as pled

GAF argues that the following additional causes of action are time-barred *as pled* because of insufficient allegations of fraudulent concealment to toll the limitations period.[10]

---

[10] In reply, GAF withdraws its argument at this time that Plaintiffs' Virginia Consumer Protection Act claim (Count 7), California False Advertising Law claim (Count 16), and

- **Count 2** (Indiana Deceptive Consumer Sales Act-Stidham)

- **Count 8** (Montana Consumer Protection Act-Hoover & Cohen)

- **Count 15** (New York General Business Law § 349-Giovannetti)

- **Count 18** (Nebraska Consumer Protection Act-Warren)

- **Count 21** (Breach of Implied Warranties-Williams, Denton, Sheridan, Ross, Warren, Khanna, Giovannetti, Robertie, Shepherd, Wolcott)

- **Count 22** (Negligent Misrepresentation-Mapp)

- **Count 23** (Fraudulent Misrepresentation-Mapp)

- **Count 27** (Unjust Enrichment-McGovern, Narducci, Claxton, Mapp, Warren, Wolcott)

(*See* GAF Mot. at 29-34.)[11]

Plaintiffs do not contest the limitation periods put forward by GAF (except with regard to North Carolina for Plaintiff Shepherd as discussed above in Section V.A.1). Instead, Plaintiffs argue that the relevant periods under state law will be tolled because of "the discovery rule and the doctrine of equitable estoppel/fraudulent concealment." (Pls.'

---

California Consumer Legal Remedies Act (Count 17) are time-barred. (*See* GAF Reply at 6 n.4.)

[11] In reply, GAF argues for the first time that many of these claims should be dismissed as time-barred ***as a matter of law***. (*See* GAF Reply at 7-9.) GAF very clearly identified in its motion—in two separate places—the causes of action for which it was moving on as time-barred as a matter of law versus on the basis of a pleading failure due to insufficient allegations of fraudulent concealment. (*See* GAF Mot. at 35-36, 54 ("In addition, many of Plaintiffs' claims suffer from additional incurable deficiencies that warrant dismissal with prejudice. . . . the following claims are time-barred as a matter of law because the applicable states' laws do not recognize any tolling even if fraudulent concealment had been adequately pled: the Illinois claims for breach of implied warranties; Mr. Shepherd's tort (Counts 1, 22- 24, 26), UDTPA (Count 10) and unjust enrichment (Count 27) claims in North Carolina; and the OCSPA (Count 12) claim in Ohio.").) The Court will not address GAF's arguments, first made in reply, that additional causes of action should be dismissed as a matter of law.

Opp'n at 26 & nn.36-38.)  Plaintiffs further argue—and this Court agrees—that "[a] motion to dismiss on statute of limitations grounds should be denied unless it is apparent [from the OAC's allegations] that the challenged claims are time-barred."  (*Id.* at 25 (citing *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011)).)  As the Third Circuit has recently stated with respect to the discovery rule:

> [W]hile a court may entertain a motion to dismiss on statute of limitations grounds, it may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense. This distinction comes to the fore here, where the applicability of the discovery rule is not evident on the face of the complaint but the plaintiff also does not plead facts that unequivocally show that the discovery rule does not apply.

*Schmidt v. Skolas*, 770 F.3d 241, 251 (3d. Cir. 2014) (internal citations omitted).  Here, although GAF argues that Plaintiffs have not affirmatively pled facts sufficient to justify tolling for the causes of action in the bullet list above, the Court finds that Plaintiffs have not "pleaded [themselves] out of court" because their allegations do not affirmatively demonstrate on the face of the OAC that tolling would not apply.  *See id.* at 252.  Thus, the Court denies GAF's motion to dismiss the above causes of action on the ground that they are time-barred ***as pled***.  GAF is not precluded from re-raising this issue at an appropriate stage of the proceedings.

### 3.   Magnuson-Moss Warranty Act ("MMWA")

GAF also argues that for Plaintiffs' implied warranty causes of action that are time-barred "their Magnuson-Moss claims based on that implied warranty are also time-barred because Magnuson-Moss borrows its limitations period from the applicable state statute." (GAF Mot. at 34.)  Plaintiffs concede that, if their state warranty claims are time-barred, so too are their MMWA claims based on those warranties.  (*See* ECF No. 61-1 at 6 (Pls.'

Checklist).)  Thus, as Plaintiffs did not oppose dismissal of the California (Williams), Iowa (Denton, Sheridan), Missouri (Ross), New Hampshire (Khanna), New York (Giovannetti), and Virginia (Wolcott) Plaintiffs' breach of implied warranty claims, and this Court has dismissed the Illinois breach of implied warranty cause of action as time-barred, the Court finds that the MMWA claims based on these implied warranty claims also are dismissed.

### B.  Plaintiffs' Consumer Protection Claims

As noted above, GAF generally argues that all the consumer protection claims, except for that of New York, should be dismissed for failure to meet the Rule 9(b) pleading standards.  (*See* GAF Mot. at 25 & n.15.)  However, GAF has not made any argument for how the OAC is insufficiently pled with respect to any of the specific consumer protection claims under the applicable state law.  Therefore, despite GAF's statement that "[a]t the outset, ***and before applying each state's substantive laws***, all Plaintiffs' claims must meet the appropriate federal pleading standards. . . . [and] Plaintiffs have failed to satisfy the pleading standards" (*see id.* at 17), this Court does not treat GAF's motion as moving on that basis for these claims.

The parties' arguments over which pleading standard applies, however, raises separate pleading issues for certain states because some courts find that different pleading standards apply depending on the basis for the claims.  In other words, some statutes provide for relief without proving fraud.  Because the pleading standard arguments are specifically addressed by both parties and will inform any re-pleading, those arguments are addressed below, along with other specific arguments for dismissal made by GAF for these

claims.[12]

### 1.    Count 2 (Indiana Deceptive Consumer Sales Act ("IDCSA"))

GAF argues that Plaintiffs' IDCSA claim must meet the heightened pleading standard of Rule 9(b).  (*See id.* at 25 n.15)  GAF also argues that the IDCSA claim should be dismissed for failure to plead "either that the deceptive act is incurable or that the plaintiff notified the defendant in writing and provided an opportunity to cure the deceptive act," and that "Indiana Plaintiffs allege neither fact here."  (*Id.*  at 49 (citing Ind. Code § 24-5- 0.5-5(a)).)  Both arguments are related.

*Young v. Harbor Motor Works, Inc.*, provides that "[u]nder the IDCSA, where a movant . . . [does] not distinguish between its allegations of deceptive acts and incurable deceptive acts . . . the entire complaint must be judged by Rule [9(b)] standards."  2009 WL 187793 at *6 (N.D. Ind. Jan 27, 2009) (internal quotations omitted, alteration in original).  Additionally, Indiana Code § 24-5-0.5-5(a) provides: "No action may be brought under this chapter . . . unless (1) the deceptive act is incurable or (2) the consumer bringing the action shall have given notice in writing to the supplier . . . ."  Plaintiff acknowledges this requirement by quoting the same provision in opposition.  (*See* Pls.' Opp'n at 15.)  However, Plaintiffs are unable to clearly identify what they are alleging—an incurable deceptive act or a deceptive act where notice is required.

In arguing that the Rule 9(b) standards are not applicable to their IDCSA claim, Plaintiffs cite *Hayes v. Chapman*, 894 N.E. 2d 1047, 1053 (Ind. Ct. App. 2008), and add the following parenthetical explanation: "holding no showing of fraudulent intent is

---

[12] Arguments that a claim is time-barred are addressed in Section V.A, and not re-addressed in this section.

required *for Indiana Deceptive Consumers Sales Act. Ind. Code § 24-5-0.5-2(7)*)." (*Id.* at 11 n.12 (emphasis added).) Section 24-5-0.5-2(7) deals with "uncured deceptive act[s]" for which notice is required; *see also Hayes*, 894 N.E.2d at 1053 (distinguishing between "[a]n uncured deceptive act" under "I.C. § 24–5–0.5–2(a)(7)" and "[a]n incurable deceptive act" under "I.C. § 24–5–0.5–2(a)(8).")[13]   However, a few pages farther in Plaintiffs' opposition, and Plaintiffs—in addressing GAF's notice requirement point—argue that "[i]n fact, the IDCSA defines '*incurable deceptive act*' as meaning 'a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead.' *Ind. Code. § 24-5-0.5-2(8).* As discussed herein, *the OAC contains ample allegations that GAF acted with an intent to deceive or mislead* Plaintiffs." (Pls.' Opp'n at 15-16 (citing a different provision than they relied on for their Rule 8(a) argument) (emphasis added).)

Plaintiffs cannot have it both ways: either they are pleading an uncured defect—which has a notice requirement but potentially lower pleading standard, or they are pleading an incurable deceptive act which does not have a notice requirement but must meet 9(b). And, because even Plaintiffs are not clear on the basis for their IDCSA claim, the pleadings are obviously insufficient to put GAF on notice of the basis of the claim. Therefore, Plaintiffs' IDCSA claim is dismissed without prejudice.

### 2. Count 4 (Michigan Consumer Protection Act ("MCPA")

For Plaintiffs' MCPA claim, GAF's only argument is generally that Rule 9(b) must be met. (*See* GAF Mot. at 25 & n.15; ECF 60-2 (GAF's Checklist of Arguments ("GAF's

---

[13]  The Indiana Supreme Court has held that "the language and structure of the Act do not require intent as an element of every deceptive act." *McKinney v. State*, 693 N.E.2d 65, 68 (Ind. 1998).

Checklist").)  Plaintiff argues that meeting Rule 9(b) is not required for an MCPA claim. (*See* Pls.' Opp'n at 11 & n.13 (citing *Michels v. Monaco Coach Corp.*, 298 F. Supp. 2d 642, 651 (E.D. Mich. 2003)).)  As an initial point, "[t]he Michigan Consumer Protection Act [('MCPA')] proscribes thirty-seven discrete acts." *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 339 (D.N.J. 2014) (citing Mich. Comp. Laws § 445.903).  Furthermore, "[t]o state a claim under the [MCPA], a complaint must identify which proscribed act or acts the defendant has allegedly committed." *Id.*  Here, Plaintiffs allege that GAF's conduct violates §§ 445.903(n), (s), (bb), and (cc), but add that their claims are "not necessarily limited to [those] sections." (OAC ¶ 147.)  Plaintiffs' "not necessarily limited" language does not sufficiently state a claim for unidentified sections of the MCPA.  However, Plaintiffs' case supports the proposition that not all proscribed acts must meet the heightened pleading standard. *See Michels*, 298 F. Supp. 2d at 651 (MCPA claim "not premised on fraud," but on "breach of its express and implied warranties" under 445.903(y)).  GAF's case is in agreement: "When the claim is based on breach of express or implied warranties, these pleading strictures do not apply but otherwise, the allegations must include the specificity required by Fed. R. Civ. P. 9(b)." *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 666 (E.D. Mich. 2011).  Section 445.903(y), however, is not one of the sections on which Plaintiffs' claims are based.  Therefore, Plaintiffs' citation is not helpful here.  Because the parties do not address which standard should apply to the alleged violations actually pled, the Court will not reach this issue at this time.

Also, because GAF did not specifically argue how Plaintiffs' MCPA claim failed to meet either pleading standard, and Plaintiffs have identified specific proscribed acts, the Court will not dismiss this claim at this time.  Because the Court is treating this claim as

unmoved on for failure to meet the appropriate pleading standard, GAF is not precluded from arguing that any amended pleading fails to meet the standard.

3.      Count 5 (Missouri Merchandising Practices Act ("MMPA"))

Plaintiffs argue that "[a] claim alleging violations of the Missouri Merchandising Practices Act does not necessarily need to be stated with the same particularity as a claim of common law fraud or mistake."  (Pls.' Opp'n at 11 n.14 (quoting *Ullrich v. CADCO, Inc.*, 244 S.W.3d 772, 777 (Mo. Ct. App. 2008)).)  However, the full sentence in that cases provides: "Although **Rule 55.15** requires that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity, a claim alleging violations of the MMPA does not necessarily need to be stated with the same particularity as a claim of common law fraud or mistake."  *Ullrich*, 244 S.W.3d at 777 (internal quotations omitted, emphasis added).[14]   Rule 55.15 is a Missouri rule of procedure.  Citation to a case analyzing state procedural rules is not persuasive.

GAF, on the other hand, argues that courts applying federal rules of procedure apply the Rule 9(b) heightened pleading standards to MMPA claims.  (*See* GAF Mot. at 25 n.15 (citing *Johnsen v. Honeywell Int'l Inc.*, 2015 WL 631361, at *9 (E.D. Mo. Feb. 12, 2015).)  The *Johnsen* court stated: "In MMPA actions, courts apply the particularity requirements of Fed. R. Civ. P. 9(b) pertaining to fraud."  2015 WL 631361, at *9.  The court in *Blake v. Career Education Cororation* (cited by the *Johnsen* court) likewise noted that "[t]he United States District Courts in Missouri have consistently applied Rule 9(b) to cases arising under the MMPA."  2009 WL 140742, at *2 (E.D. Mo. Jan. 20, 2009) (collecting cases).

---

[14] Plaintiffs' citation does not indicate that the beginning of the sentence has been omitted.

Additionally, here, Plaintiffs' MMPA claims plainly sound in fraud. Plaintiffs allege: "GAF's conduct constitutes deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact." (OAC ¶ 153.) The Third Circuit has made clear that where fraud is alleged, "[t]he stringent pleading restrictions of Rule 9(b), Fed. R. Civ. P., apply to such a claim," and that "[t]o satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200. Therefore, the Court will apply the heightened pleading standards of Rule 9(b) to Plaintiffs' MMPA claim.

However, because GAF did not specifically argue how Plaintiffs' MMPA claim failed to meet Rule 9(b), the Court will not dismiss this claim at this time on this basis. Because the Court is treating this claim as unmoved on for failure to meet 9(b), GAF is not precluded from arguing that any amended pleading fails to meet the requirement.

4. Count 6 (Illinois Consumer Fraud Act ("ICFA"))

Plaintiffs argue that "[b]ecause neither fraud nor mistake is ***an element of unfair conduct*** under [the] Illinois' Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." (Pls.' Opp'n at 11 n.15 (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008)) (emphasis added).) However, *Windy City* also states: "The Supreme Court of Illinois has held that recovery under the Consumer Fraud Act 'may be had for unfair as well as deceptive conduct.'" 536 F.3d at 669 (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)); *see also In re Riddell Concussion Reduction Litig.*,

77 F. Supp. 3d 422, 433 n.11 (D.N.J. 2015) (citing *Windy City* for the proposition that claims based on unfair practices "need only meet the notice pleading standard of Rule 8(a)" but holding that "Rule 9(b) applies to Plaintiffs' claims to the extent they are premised on fraud"); *Stavropoulos v. Hewlett-Packard Co.*, 2014 WL 2609431, at *4 (N.D. Ill. June 9, 2014) ("Claims under ICFA sound in fraud and therefore must be pled with particularity under Rule 9(b).")

Here, Plaintiffs allege that GAF's conduct "was unfair, unlawful, ***and*** a fraudulent business practice." (OAC ¶ 163 (emphasis added); *see also id.* ¶ 164 (same).) However, they also allege that "GAF committed unfair ***or*** deceptive acts and practices." (*Id.* ¶¶ 165, 166 (emphasis added).)

As with Plaintiffs' Indiana consumer protection claim, Plaintiffs cannot have it both ways: either they are pleading an unfair business practice—which may only need to meet Rule 8(a)'s pleading requirements, or they are pleading fraud which must meet Rule 9(b). And, because the pleadings are not clear on the basis of their claim, Plaintiffs' ICFA claim is dismissed without prejudice. The Court does note that, overall, Plaintiffs' allegations with respect to this claim appear to sound in fraud.

### 5.   Count 7 (Virginia Consumer Protection Act ("VCPA"))

Plaintiffs argue that the "***misrepresentations*** providing the basis of a [VCPA] claim need not be pleaded with the same kind of particularity as common law fraud claims." (Pls.' Opp'n at 11 n.16 (quoting *Debrew v. Lexus,* 1997 WL 1070613, at *2 (Va. Cir. Ct.1997)) (emphasis added).) "The claims of fraud and misrepresentation are distinct under the VCPA." *Nigh v. Koons Buick Pontiac GMC, Inc.*, 143 F. Supp. 2d 535, 553 (E.D. Va. 2001). And, the "misrepresentations" which provide "the basis of a VCPA claim

need not be pled with the same kind of particularity as common law fraud claims." *Id*. However, courts have required the pleading standards of Rule 9(b) to be met for a VCPA claim where fraudulent behavior is alleged. *See Murphy v. Capella Educ. Co.*, 589 F. App'x 646, 652, 656-57 (4th Cir. 2014).

Here, Plaintiffs allege that "GAF violated V$_A$. C$_ODE$ § 59.1-200.4, which provides, inter alia, that: '[t]he following ***fraudulent*** acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful . . . [listing acts]." (OAC ¶ 174 (emphasis added).)  Plaintiffs further allege: "In particular, GAF's ***fraudulent concealment*** of the defects with the Decking, as described more fully . . . throughout [the] Complaint and incorporated herein by reference, violated the Virginia Consumer Protection Act." (*Id.* ¶ 175 (emphasis added).)  Plaintiffs cases do not support the proposition that Plaintiffs' allegations based on ***fraud*** need not meet the particularity requirement of Rule 9(b).  Because Plaintiffs' VCPA claim plainly sounds in fraud, the Court will apply the heightened pleading standards of Rule 9(b) to this claim.

However, because GAF did not specifically argue how Plaintiffs' VCPA claim failed to meet Rule 9(b), the Court will not dismiss this claim at this time on this basis. Because the Court is treating this claim as unmoved on for failure to meet 9(b), GAF is not precluded from arguing that any amended pleading fails to meet this standard.

      6.    Count 8 (Montana Consumer Protection Act ("MTCPA")

Although GAF argues that Rule 9(b) should apply to Plaintiffs' MTCPA claim, it provides no case law or other analysis to support its argument, simply stating that "[w]hile it seems that no federal court has yet affirmatively concluded that Rule 9(b) applies to this statute, this claim also sounds in fraud and should be pled with particularity, as all of these

other courts [applying other state laws] have held."  (GAF Mot. at 25 n.15.)  That GAF can find no on-point case law does not relieve it of the obligation to support its argument with legal analysis.  GAF may not punt legal argument to this Court for research and analysis through such bare assertions.  Likewise, Plaintiffs who argue for application of Rule 8(a) similarly improperly punt to this Court.  (*See* Pls.' Opp'n at 12 n.21 ("GAF provides no case law to assert that the Montana Consumer Protection Act is required to be pleaded with particularity.  Thus, GAF asserts no basis to assert a heightened pleading standard for this claim.") (internal citations omitted).)  Therefore, the Court is declining at this time to decide the issue of the appropriate pleading standard for this claim.

Additionally, because GAF did not specifically argue how Plaintiffs' MTCPA claim failed to meet either 8(a) or 9(b), the Court will not dismiss this claim at this time.  Because the Court is treating this claim as unmoved on for failure to meet the pleading standard, GAF is not precluded from arguing specifically that any amended pleading fails to meet the applicable standard.

7.  Count 9 (Colorado Consumer Protection Act ("CCPA"))

**Legal Standard.**  The parties do not dispute that the Rule 9(b) pleading standards apply to this claim. However, because GAF did not specifically argue how Plaintiffs' CCPA claim failed to meet Rule 9(b), the Court will not dismiss this claim on this basis at this time.  Because the Court is treating this claim as unmoved on for failure to meet 9(b), GAF is not precluded from arguing that any amended pleading fails to meet the requirement.

**Certain Relief Is Not Permitted.**  GAF argues that Plaintiffs' CCPA claim also "should be dismissed to the extent it seeks monetary relief on behalf of a class because the

CCPA does not authorize any damages, attorneys' fees, or costs for claims brought as class actions."  (GAF Mot. at 49 (citing *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1218-19 (D. Colo. 2013)).)  Plaintiffs argue that CCPA claims for money damages have been allowed to proceed in some cases.  (*See* Pls.' Opp'n at 16 & n.23.)   For example, Plaintiffs assert that "[w]hile Colorado courts have not addressed this precise issue, in *In re Onstar Contract Litig.*, [600 F. Supp. 2d 861 (E.D. Mich. 2009),] interpreting Colorado law, the Michigan district court held class members could be awarded actual damages." (*Id.* at 16.)

Various courts analyzing Colorado law have criticized the holding in *In re Onstar* for relying on a case analyzing a prior—not current—version of the statute at issue.  *See In re Syngenta AG MIR 162 Corn Litig.*, 2015 WL 5607600 at *50-51 (D. Kan. Sept. 11, 2015) (analyzing Colorado law and dismissing the CCPA class claims) ("Plaintiffs also cite to *In re OnStar Contract Litig.*, 600 F.Supp.2d 861 (E.D. Mich. 2009), in which the court relied on *Robinson* [*v. Lynmar Racquet Club, Inc.*, 851 P.2d 274 (Colo.App.1993)]. The *OnStar* court did not consider the different version of the statute at issue in *Robinson*, however, and this Court cannot agree with that court's conclusion that by the plain language of the [current] statute, the class action prohibition applies only to statutory and treble damages."); *Friedman v. Dollar Thrifty Automotive Group, Inc.*, 2015 WL 4036319, at *5 (D. Colo. July 1, 2015) ("What Plaintiffs fail to acknowledge, however, is that the *Robinson* case relied on by *Onstar* was decided under a previous version of § 6–1–113(2) which precluded only treble damages, costs and attorney fees. Actual damages were not excluded."); *see also Martinez*, 886 F. Supp. at 1218 ("The plain and unambiguous language of the statute [§ 6-1-113(2)] compels the conclusion that *all* of the remedies in

subparts (a)(I)-(III) and (b), including actual damages, are not available to classes.")
(emphasis in original). In short, Colorado courts have addressed this specific issue and
have found Plaintiffs' exact arguments unpersuasive.

Plaintiffs' other cases—which they acknowledge are not on point—are equally
unpersuasive. (*See* Pls.' Opp'n at 16 & n.23 ("While Colorado courts have not addressed
this precise issue . . . ."); *Jackson v. Unocal Corp.*, 262 P.3d 874 (Colo. 2011) (Plaintiffs
provide no pincite for this case which discusses a "land damages class action," and the
Court finds no discussion of § 6–1–113(2)); *Mountain States Tel. and Tel. Co. v. District
Court*, 778 P.2d 667, 669 (Colo. 1989) (a case not analyzing § 6-1-113(2) and decided prior
to the current version of the statute); *Mangone v. U-Haul Int'l, Inc.*, 7 P.3d 189 (Colo. App.
1999) (Plaintiffs provide no pincite for this case, and the Court finds no discussion of § 6–
1–113(2)). For these reasons, the Court dismisses Plaintiffs' CCPA claims to the extent
they seek monetary damages on behalf of a class.

8.   Count 10: North Carolina Unfair and Deceptive Trade Practices
("UDTPA")

**Legal Standard.** Plaintiffs argue that "[a] . . . UDTPA claim *does not* require proof
of fraud, bad faith, or actual deception." (Pls.' Opp'n at 11-12 n.17 (emphasis in original)
(quoting *Geo Plastics v. Beacon Dev. Co.*, 434 F. App'x. 256, 261 (4th Cir. 2011)).) The
case cited by GAF states the same thing. *See La Tortilleria, Inc. v. Nuestro Queso, LLC*,
2014 WL 1322627, at *7 (M.D.N.C. Mar. 31, 2014) (both cases citing to *RD&J Props. V.
Lauralea-Dilton Enters., LLC*, 600 S.E.2d 492, 501 (N.C. 2004)), *adopted*, 2014 WL
3484995 (M.D.N.C. July 11, 2014). As identified in *Geo Plastics*, the first element of a
UDTPA claim is that "the defendant committed an unfair *or* deceptive act or practice . . .
." 434 F. App'x at 261 (emphasis added). The *Geo Plastics* court, however, was deciding

a motion for summary judgment, not analyzing the appropriate pleading standard to apply to this claim.  *See id.* at 261-62.  On the other hand, in *La Tortilleria* where the basis of the UDTPA was fraudulent inducement, the court held that Rule 9(b) applied.  *See* 2014 WL 1322627, at *6 ("When fraud is alleged, the circumstances constituting fraud must be pled with particularity.").

Here, Plaintiffs allege that GAF engaged in "misrepresentations, concealment, omissions, ***and other deceptive conduct***."  (OAC ¶ 206 (emphasis added).)  Because Plaintiffs' North Carolina UDTPA[15] are based on deceptive (not simply unfair) conduct, the Court finds that Rule 9(b) is applicable.  However, because GAF did not specifically argue how Plaintiffs' UDTPA claim failed to meet Rule 9(b), the Court will not dismiss this claim on this basis at this time.  Because the Court is treating this claim as unmoved on for failure to meet 9(b), GAF is not precluded from arguing that any amended pleading fails to meet the requirement.

**Aggravating Circumstances.**  GAF argues that Plaintiffs' UDTPA claims should be dismissed for the additional reason that Plaintiffs have failed to allege "substantial aggravating circumstances."  (*See* GAF Mot. at 49 ("North Carolina courts and the Fourth Circuit have held that a mere breach of contract or breach of warranty does not, standing alone, constitute an unfair or deceptive trade practice.").)  Plaintiffs do not seem to disagree on the general statement of the law as cited by GAF.  *See South Atlantic Ltd. P'ship of Tennessee, LP v. Riese*, 284 F.3d 518, 535 (4th Cir. 2002) ("[W]hile there is no doubt that the North Carolina courts have construed the UTPA liberally, there are some limits on its

---

[15] The Court does not reach UDTPA arguments for North Carolina Plaintiff Shepherd as his UDTPA cause of action has been dismissed as time barred.  *See supra* Section V.A.1.

application. For example, only practices that involve [s]ome type of egregious or aggravating circumstances are sufficient to violate the UTPA.) (internal citations and quotations omitted) (cited by Plaintiffs, *see* Pls.' Opp'n at 17).

Plaintiffs, instead, argue that they have adequately pled an action that goes beyond contract law. Plaintiffs assert that "[t]his, however, is not a mere breach of warranty case . . . . Plaintiffs' UDTPA claim is rooted in the conduct of GAF and its knowledge that the Decking was not manufactured in accordance with its representations and GAF failed to disclose this information." (Pls.' Opp'n at 17.) However, Plaintiffs do not address the language in GAF's case that provides that a "[p]laintiff cannot convert its breach of warranty claim into an unfair trade practices claim simply by artfully pleading the appropriate legal language for such a claim. . . . Plaintiff must also allege facts to support its legal claims." *Terry's Floor Fashions, Inc. v. Ga.-Pac. Corp.*, 1998 WL 1107771, at *10 (E.D.N.C. July 23, 1998) (internal quotations omitted). This statement in *Terry* is consistent with this Court's position on the insufficiency of mere recitation of legal catchwords or phrases. As the Court discusses throughout this Opinion (*see, e.g., infra* Section V.G), Plaintiffs' allegations with respect to GAF's conduct are short on substance. Therefore, the Court finds that dismissal without prejudice of Plaintiffs' UDTPA claim is appropriate on this basis.

9.    Count 11 (Ohio Product Liability Act ("OPLA"))

Neither GAF nor Plaintiffs address the appropriate legal standard for Plaintiffs' Ohio OPLA claim. Both parties cite to cases dealing with the Ohio Consumer Sales

Practices Act (Count 12),[16] not OPLA claims.  (*See* GAF Mot. at 25 n.15 ("Count 12: Ohio Consumer Sales Practice Act"); Pls.' Opp'n at 12 n.18 ("Indeed, Ohio district courts in many cases have not applied Rule 9(b)'s heightened pleading standard to Ohio CSPA claims.").)  Therefore, the Court does not address the appropriate standard for the OPLA claim at this time.  Also, because GAF did not specifically argue how Plaintiffs' OPLA claim failed to meet either 8(a) or 9(b), the Court will not dismiss this claim on this basis at this time.  Because the Court is treating this claim as unmoved on for failure to meet the pleading standard, GAF is not precluded from arguing specifically that any amended pleading fails to meet the requirement.

10.   Count 13 (New Hampshire Rev. Stat. § 358-A *et seq.* ("NHCPA"))

GAF argues that Rule 9(b) applies to Plaintiffs' NHCPA claim.  (*See* GAF Mot. at 25 n.15 (citing *Gwyn v. Loon Mountain Corp.*, 2002 WL 1012929 (D.N.H. May 15, 2002), *aff'd*, 350 F.3d 212 (1st Cir. 2003).)  The *Gwyn* court held that "[b]y basing its CPA claim upon alleged misrepresentations and further asserting that the misrepresentations constituted a ***knowing and willful*** violation of the CPA, plaintiffs have in essence accused defendant of fraud. Where an allegation of fraud lies at the core of a cause of action, the heightened pleading standards of Fed. R. Civ. P. 9(b) apply."  2002 WL 1012929, at *7. Plaintiffs, in response, cite to *Leonard v. Abbott Labs., Inc.*, 2012 WL 764199 (E.D.N.Y. Mar. 5, 2012) (analyzing the New Hampshire statute).  (*See* Pls.' Opp'n at 12 n.22.)  The *Leonard* court first noted that it was "bound by the law of [the] Second Circuit," and then held that given what it believed were similarities between the NHCPA and the New York

---

[16] Plaintiffs have not opposed dismissal of Count 12.  (*See* ECF No. 61-1 at 3 (Pls.' Checklist).)

consumer protection statute, Rule 8(a) should apply.  *See* 2012 WL 764199, at *19-20.  The *Leonard* court also acknowledged that "[t]he act provides a non-exhaustive list of prohibited practices."  *Id.* at *16.  Plaintiffs' briefing does not compare the cases cited to the actual language in the OAC or clearly explain the basis for their claim under this statute.

Plaintiffs specific NHCPA allegations do not contain the words "fraud," "deception," or "willful and knowing."  Instead, they are more vague and assert that GAF "was aware, or by the exercise of reasonable [care] should have been aware" of its allegedly improper conduct.  (OAC ¶ 237.)  Neither party analyzes the appropriate standard in the context of Plaintiffs' allegations, and the Court will not do so *sua sponte*.

Because GAF has not properly moved on this claim for failure to meet the pleading standard in any case, the Court will not reach this issue at this time.  Because the Court is treating this claim as unmoved on for failure to meet the pleading standard, GAF is not precluded from arguing that any amended pleading fails to meet the requirement.

11. <u>Count 15 (New York  General Business Law § 349)</u>

Because GAF did not specifically argue how Plaintiffs' New York claim failed to meet Rule 8(a), the Court will not dismiss this claim at this time.  Because the Court is treating this claim as unmoved on for failure to meet Rule 8(a), GAF is not precluded from arguing that any amended pleading fails to state a claim for this Count.

12. <u>Counts 16 and 17 (California False Advertising Law and California Consumer Legal Remedies Act)</u>

Because GAF did not specifically argue how Plaintiffs' California consumer claims failed to meet Rule 9(b), the Court will not dismiss these claims at this time.  Because the Court is treating these claims as unmoved on for failure to meet 9(b), GAF is not precluded from arguing that any amended pleading fails to state a claim for these Counts.

13.   <u>Count 18 (Nebraska Consumer Protection Act ("NCPA"))</u>

GAF argues that Rule 9(b) applies to Plaintiffs' NCPA claim.  (*See* GAF Mot. at 26 n.15 (citing *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1099 (C.D. Cal. 2012)) (applying Rule 9(b) to Nebraska's statute).)  Plaintiffs, on the other hand, argue that "'[t]he heightened pleading requirements of Rule 9(b) do not apply to allegations of unfair and deceptive trade practices' under Nebraska's laws."  (Pls.' Opp'n at 12 n.19 (quoting *Alpharma, Inc. v. Pennfield Oil Co.*, 2008 WL 2331019, at *2 (D. Neb. June 4, 2008).)  Neither of these cases provides any pleading standard analysis.  In *In re ConAgra*, "Plaintiffs [did] not dispute that Rule 9(b), rather than the more lenient requirements of Rule 8, govern[ed] their claims."  908 F. Supp. 2d at 1097.   And the quote from Plaintiffs' case is supported by citation to a case "regarding unfair and deceptive trade practice action brought by the FTC under the Federal Trade Commission Act" and *Pelman* (discussing New York law).  *See* 2008 WL 2331019, at *2.  Because GAF has not properly moved on this claim for failure to meet the pleading standard, and both parties provide no real analysis or persuasive support for their pleading positions, this Court will not reach this issue at this time.   Because the Court is treating this claim as unmoved on for failure to meet the pleading standard, GAF is not precluded from arguing that any amended pleading fails to meet the requirement.

14.   <u>Count 19 (Iowa Consumer Fraud Act ("IACFA"))</u>

GAF argues that Rule 9(b) applies to Plaintiffs' IACFA claims.  (*See* GAF Mot. at 25 n.15 (citing *Wegner v. Pella Corp.*, 2015 WL 2089658, at *6 (D.S.C. May 5, 2015) (applying Rule 9(b) to Iowa's statute)).)  Plaintiffs do not provide case law for Iowa supporting that Rule 8(a) should apply to this claim.  (*See* Pls.' Opp'n at 12 n.20.)   Instead

Plaintiffs cite to GAF's case and argue instead that "[w]hile the court held Rule 9(b) applied to a claim for a violation of the IACFA, it also held a 'relaxed Rule 9(b) standard' was appropriate."  (*Id.* (quoting *Wegner*).)

First, it appears that Plaintiffs are actually arguing for a "relaxed" 9(b) approach for this claim, not Rule 8(a).  Second, in *Wegner* the court held that "[a]lthough the **Fourth Circuit** has not adopted this relaxed Rule 9(b) standard, a relaxed standard **comports with the Fourth Circuit's [general] instruction[s]**" regarding pleading under Rule 9(b).  2015 WL 2089658, at *6 (emphasis added).  Plaintiffs do not cite to Third Circuit cases applying such a relaxed standard for claims sounding in fraud, nor do they explain why they believe such an approach would be utilized in this district.  The Court, thus, finds Plaintiffs' argument unpersuasive.

Plaintiffs also argue that they allege a *per se* violation of the IACFA, and then state that "[t]here is no requirement that the IACFA claim have a heightened pleading requirement."  (Pls.' Opp'n at 12 n.20.)  Plaintiffs provide no explanation for their conclusion.  Here, Plaintiffs allege that GAF's "concealment, **intentional** and negligent **misrepresentation**, and breach of express and implied warranties **constitute** unfair, unlawful, **and fraudulent business acts and practices** in violation of Iowa Code Ann. § 714H.3." (OAC ¶ 323 (emphasis added).)  As Plaintiffs' IACFA claim sounds in fraud, and they have provided no analysis or support for application of Rule 8(a) standards, the Court finds that the heightened pleading standards of Rule 9(b) (as applied in the Third Circuit) are applicable.  However, because GAF did not specifically argue how Plaintiffs' IACFA claim failed to meet Rule 9(b), the Court will not dismiss this claim at this time.  Because the Court is treating this claim as unmoved on for failure to meet 9(b), GAF is not

precluded from arguing specifically that any amended pleading fails to meet the requirement.

15.   Economic Loss Doctrine

In addition to the arguments discussed above, GAF also argues that the Missouri MMPA, Virginia VCPA, North Carolina UDTPA, Ohio OPLA, and Nebraska NCPA claims must be dismissed for failure to plead more than economic losses.  (*See* GAF Mot. at 38 & n.22.)  Where Plaintiffs provided cases on this point in opposition (*see* Pls.' Opp'n at 34-35 n.41), they support GAF's general statement of the law (*see* GAF Mot. at 38-39 n.22).  MO: *Compare In re Genetically Modified Rice Litig.*, 666 F. Supp. 2d 1004, 1015 (E.D. Mo. 2009) ("The economic loss doctrine bars recovery of purely pecuniary losses in certain tort cases if there is no personal injury or physical damage to property other than the property at issue in the case—usually an allegedly defective product in a products liability case.") (Plaintiffs' case) *with Graham Constr. Servs. v. Hammer & Steel Inc.*, 755 F.3d 611, 616 (8th Cir. 2014) ("Under Missouri law, [r]ecovery in tort for pure economic damages are only limited to cases where there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence.") (internal quotations omitted) (GAF's case); NC: *Compare Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC*, 2005 U.S. Dist. LEXIS 34011, at *35 (M.D.N.C. 2005) ("North Carolina has adopted the economic loss rule, which prohibits recovery for economic loss in tort. Instead, such claims are governed by contract law.") (quoting *Moore v. Coachmen Indus.*, 499 S.E.2d 772, 780 (N.C. App. 1998)) (Plaintiffs' case) *with In re Bldg. Mat'ls Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*, 2013 WL 169289, at *9 (D.S.C. Jan. 16, 2013) ("[T]he United States Court of Appeals for the Fourth Circuit has found error in

allowing an unfair and deceptive trade practices claim to proceed under North Carolina law where the claim essentially alleged a contractual breach.") (citing *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 346 (4th Cir. 1998)) (GAF's case); OH: *Compare Maranatha Volunteers Int'l, Inc. v. Golden Giant, Inc.*, 1999 WL 357786 at *4 (6th Cir. 1999) ("It is not the nature of the claim but the character of the loss that determines whether the cause of action lies in tort or contract.") (Plaintiffs' case) *with Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1146 (Ohio 2002) ("In this case, since appellant alleged only economic damages, it has not set forth a statutory product liability claim and is consequently barred from bringing any such claims under the Act.") (GAF's case); NE: *Lesiak v. Central Valley Ag Co-op, Inc.*, 808 N.W.2d 67, 82 (Neb. 2012) (The court "reaffirm[ed] the doctrine's continued application in the products liability context," and made clear that "the doctrine requires that where a defective product causes harm only to itself, unaccompanied by either personal injury or damage to other property, contract law provides the exclusive remedy to the plaintiff.") (cited by both Plaintiffs and GAF).[17]

Plaintiffs do not argue that these claims cannot be barred by the economic loss doctrine. Instead they argue that their allegations of damage to other property are adequately pled. (Pls.' Opp'n at 34-35; *see also* ECF No. 61-1 (Pls.' Checklist) (stating only that Plaintiffs have "[s]ufficiently alleged damage to 'other property'").)

The individual plaintiffs plead nothing more than "that any other property damage

---

[17] Plaintiffs do not provide case law for Virginia. GAF's Virginia case law also supports that more than an economic loss must be pled. *See McConnell v. Servinsky Eng'g, PLLC*, 22 F. Supp. 3d 610, 614 (W.D. Va. 2014) ("This is an economic loss, which occurs when a product injures itself because one of its component parts is defective, and is a loss for which no action in tort will lie.") (internal quotations omitted).

caused by the Decking must be repaired."   (OAC ¶¶ 11-27, 29-32, 34-35.)  This bare assertion does not state that there is actually any other property damage alleged, much less what that damage is alleged to be for each plaintiff.    Plaintiffs generally allege that "Plaintiffs'" "residences/structures" or "exterior finishes, columns, walls, and other property" have been damaged (*see id.* ¶¶118-121), but such general allegations provide inadequate notice of whether Plaintiffs are alleging any actual damage to other property and what that damage is alleged to be.

Plaintiffs argue that "[i]f there is not damage to other property, then GAF can move to dismiss these claims at summary judgment." (Pls.' Opp'n at 35.)  The Court agrees with GAF that Plaintiffs may not "skip the federal pleading requirements, and embark on discovery to fish for claims that are legally barred."  (GAF Reply at 10.) The Supreme Court, in *Iqbal*, made clear that "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context. . . .  And [even] Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Iqbal*, 556 U.S. at 686-87.  Therefore, the Court dismisses Plaintiffs' Missouri MMPA, Virginia VCPA, North Carolina UDTPA, Ohio OPLA, and Nebraska NCPA claims without prejudice for failure to plead anything other than economic loss.

### C.    GAF's Arguments That Other Causes of Action Are Abrogated by Statute

#### 1.    Indiana

In its moving brief, GAF argued that "[t]he Indiana Products Liability Act ('IPLA') abrogates the Indiana Plaintiffs' [(Stidham)] claims for negligence (Count 1), strict liability (Count 26), negligent misrepresentation (Count 22), and fraudulent misrepresentation or

concealment (Counts 23-24)."   (GAF Mot. at 50.)   Plaintiffs did not oppose GAF's dismissal of the negligence, strict liability, and fraudulent misrepresentation Indiana causes of action.   (*See* ECF No. 61-1 at 1, 5, 7 (Pls.' Checklist).)   Plaintiffs did not concede in their Checklist dismissal of the Indiana negligent misrepresentation and fraudulent concealment/omission claims.   (*See id.* at 4, 6.)   Plaintiffs, however, also did not argue that the negligent misrepresentation and fraudulent concealment causes of action are not abrogated by the IPLA; GAF's argument regarding abrogation for these causes of action simply does not appear on Plaintiffs' checklist or in Plaintiffs' opposition.   (*See id.*; *see also* GAF Reply at 19.)

The Court agrees with GAF that all of Plaintiffs' Indiana tort claims are barred by the IPLA.  *See Ryan ex rel. Estate of Ryan v. Philip Morris USA, Inc.*, 2006 WL 449207, at *2 (N.D. Ind. Feb. 22, 2006) ("The express wording of the [IPLA] statute, as well as the clear holdings of the Indiana Supreme Court . . . make it clear that all of Ryan's claims fall within the purview of the IPLA. This is true not only of Plaintiff's negligence claims, but her fraud claims as well.") (dismissing the common law claims).   Therefore, the Indiana Plaintiff's negligent misrepresentation and fraudulent concealment claims will be dismissed with prejudice.

### 2.   Ohio

GAF argues that "[d]epending on whether this Court finds Plaintiffs have pled damage to other property, either their OPLA *or* common law claims should be dismissed." (GAF Reply at 19-20 (emphasis added).)   Plaintiffs' position appears to be that it can pursue both sets of claims for different measures of damages.   (*See* Pls.' Opp'n at 51 ("The *Huffman* court held that the plaintiff could simultaneously assert claims against a

manufacturer under the common law for negligence as well as under OPLA because the measure of damages is different.").)  Because the Court has dismissed Plaintiffs' OPLA claim, it need to decide at this time whether, if the OPLA claim is re-pled and survives dismissal, Plaintiffs could also bring common law claims with the OPLA claim.

### D.   GAF's Argument That Certain Other Causes of Action Fail Because of the Economic Loss Doctrine

GAF argues that "[t]he Economic Loss Doctrine adopted by various states also bars many of Plaintiffs' claims."  (GAF Mot. at 36.)  Specifically, GAF argues that the non-consumer protection claims shown below should be dismissed for failure to plead harm to other property.  (*See id.* at 38-39 n.22.)

- **Missouri** (Ross): Counts 1 (Negligence), 22 (Negligent Misrepresentation), 23 (Fraudulent Misrepresentation), 24 (Fraudulent Concealment), 26 (Strict Liability);

- **Nebraska** (Warren): Counts 1 (Negligence), 22 (Negligent Misrepresentation), 23 (Fraudulent Misrepresentation), 24 (Fraudulent Concealment), 26 (Strict Liability);

- **North Carolina** (Robertie): [18] Counts 1 (Negligence), 22 (Negligent Misrepresentation), 23 (Fraudulent Misrepresentation), 24 (Fraudulent Concealment);

- **Virginia** (Wolcott): Counts 1 (Negligence), 22 (Negligent Misrepresentation), 23 (Fraudulent Misrepresentation), 24 (Fraudulent Concealment);

- **California** (Williams): Counts 1 (Negligence), 22 (Negligent Misrepresentation), 26 (Strict Liability);

- **Colorado** (Kaiser, Turcheck, Tuthill, Barker, Megerle): Counts 1 (Negligence), 26 (Strict Liability);

- **Illinois** (Ernst): Counts 1 (Negligence), 22 (Negligent Misrepresentation),

---

[18] The Court does not reach the argument for these causes of action for North Carolina Plaintiff Shepherd as they have been dismissed as time barred.  *See supra* Section V.A.1. Plaintiffs did not oppose dismissal for other causes of action.  *See supra* n.4.

26 (Strict Liability);

- **Iowa** (Denton, Sheridan): Counts 1 (Negligence), 22 (Negligent Misrepresentation);

- **Michigan** (McGovern, Narducci, Claxton): Counts 1 (Negligence), 22 (Negligent Misrepresentation);

- **New Hampshire** (Khanna): Counts 1 (Negligence), 22 (Negligent Misrepresentation), 23 (Fraudulent Misrepresentation), 24 (Fraudulent Concealment), 26 (Strict Liability); and

- **New York** (Giovannetti): Counts 1 (Negligence), 22 (Negligent Misrepresentation), 23 (Fraudulent Misrepresentation), 24 (Fraudulent Concealment).

For the reasons stated previously with respect to Plaintiffs' Missouri, Nebraska, North Carolina, and Virginia consumer protection claims (*see supra* Section V.B.15), the Court agrees with GAF that the above causes of action for these states are also insufficiently pled, and, therefore, are dismissed without prejudice.

For the same reasons, the Court will dismiss the causes of action above for the California, Colorado, Illinois, Iowa, Michigan, New Hampshire, and New York Plaintiffs without prejudice. Plaintiffs have not argued that the economic doctrine is inapplicable in these states. In fact, the case law Plaintiffs cite (*see* Pls.' Opp'n at 34-35 n.41) supports GAF's legal position.[19] *See Jimenez v. Superior Court*, 58 P.3d 450, 483 (Cal. 2002) ("To apply the economic loss rule, we must first determine what the product at issue is. Only then do we find out whether the injury is to the product itself (for which recovery is barred by the economic loss rule) or to property other than the defective product (for which plaintiffs may recover in tort)."); *Metropolitan Pro. & Cas. Ins. Co. v. James McHugh*

---

[19] Plaintiffs do not provide any case cite analyzing Colorado law. (*See* Pls.' Opp'n at 34-35 n.41.)

*Constr. Co.*, 1999 WL 971283, *2 (N.D. Ill. Oct. 21, 1999) (The "doctrine prevents a plaintiff from recovering in tort for purely economic losses. . . . The economic loss rule therefore does not bar recovery for incidents resulting in damage to other property.") (internal quotations omitted); *Richards v. Midland Brick Sales Co., Inc.*, 551 N.W.2d 649, 650 (Iowa 1996) ("It is a generally recognized principle of law that plaintiffs cannot recover in tort when they have suffered only economic harm."); *Quest Diagnostics, Inc. v. MCI WorldCom, Inc.*, 656 N.W.2d 858, 862 n.4 (Mich. Ct. App. 2002) ("Michigan's economic loss doctrine is broader than other jurisdictions in that it not only includes damage to the product itself, but may also include damage to other property when this damage was within the contemplation of the parties to the agreement.") (internal quotations omitted); *Border Brook Terrace Condo. Ass'n v. Gladstone*, 622 A.2d 1248, 1253 (N.H. 1993) ("We agree with the defendants that a plaintiff may not ordinarily recover in a negligence claim for purely 'economic loss.'"); *Trump Int'l Hotel & Tower v. Carrier Corp.*, 524 F. Supp. 2d 302, 312 (S.D.N.Y. 2007) ("Thus, I find that the pressure differential flow switch did not damage 'other property' when it malfunctioned and caused the absorption chiller to freeze. As a result, Trump's negligence claim is dismissed.").

As noted above in discussing Plaintiffs' consumer protection claims, Plaintiffs simply argue they have sufficiently pled damage to other property—an exception to the rule.  (*See* Pls.' Opp'n at 34-35.)  As this Court has held above (*see supra* V.B.15), the Court disagrees that Plaintiffs' bare allegations are sufficient to survive dismissal of these causes of action.

### E.    Count 1 (Negligence): Other Argument for Dismissal

GAF argues that the negligence causes of action for the North Carolina (Robertie)[20] and Michigan (McGovern, Narducci, Claxton) Plaintiffs should also be dismissed for failure to plead a reasonable alternative design.  (*See* GAF Mot. at 48-49.)  Plaintiffs counter that "these states do not require allegations of an alternative feasible design to sustain negligence claims against a building product manufacturer."  (Pls.' Opp'n at 49-50.)  The Court agrees with GAF with respect to Michigan and Plaintiffs with respect to North Carolina.

With respect to Michigan, Plaintiffs' case identifies "a reasonable alternative design" as a required element for a negligence claim based on design defect,[21] as Plaintiffs have alleged here (*see* OAC ¶¶ 116-121).  Plaintiffs have not alleged that a reasonable alternative design was available.  Therefore, the Michigan Plaintiffs' negligence cause of action is also appropriately dismissed without prejudice on this basis.

With respect to North Carolina, Plaintiffs' case says nothing on point.  However, GAF's own case makes clear that Plaintiffs must prove "***either one of the following***: . . . the manufacturer unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation . . ." ***or*** that "the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design." *Earp v. Novartis Pharm. Corp.*, 2013 WL 4854488, at *6 (E.D.N.C. Sept. 11, 2013) (citing N.C. GEN. STAT. § 99B-6(a)) (emphasis added).  GAF's case thus does not support that a reasonable alternative design must be pled

---

[20] The Court does not reach this argument for North Carolina Plaintiff Shepherd as the cause of action has been dismissed as time barred.  *See supra* Section V.A.1.

[21] *See Sundberg v. Keller Ladder*, 2001 WL 1397290, at *5-6 (E.D. Mich. Nov. 8, 2001).

in every case.  That this Court finds that a reasonable alternative design is not always required to state a negligent design claim under North Carolina law does not mean that Plaintiffs have adequately stated a claim under North Carolina law.  GAF did not appropriately move on that broader basis, so the Court has not reached that question.

### F.    Count 22 (Negligent Misrepresentation): Other Arguments for Dismissal

#### 1.    Failure to plead a special relationship

GAF argues that the negligent misrepresentation claims for the Ohio (Burger), North Carolina (Robertie),[22] Iowa (Denton, Sheridan), Virginia (Wolcott), and New York (Giovannetti) Plaintiffs should be dismissed for failure to plead a special relationship.[23] (GAF Mot. at 45 & n.29; ECF No. 63-1 at 8-9 (GAF's Reply Checklist).)

Plaintiffs do not respond to GAF's arguments with respect to Ohio, Virginia, and New York.  (*See* Pls.' Opp'n at 45-46.)  GAF's case law for these states supports that a special relationship is required to bring a negligent misrepresentation claim under these states' law.  *See Premier Bus. Grp., LLC v. Red Bull of N. Am., Inc.*, 2009 WL 3242050, at *11 (N.D. Ohio Sept. 30, 2009) ("[N]egligent misrepresentation requires a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transactions.") (internal quotations omitted); *Velez v. Lizardi*, 2015 WL 868929, at *4-5 (Va. Ct. App. Mar. 3, 2015) (requiring a special relationship for

---

[22] North Carolina Plaintiff Shepherd's negligent misrepresentation claim has been dismissed as time barred.  *See supra* Section V.A.1.  Therefore, the Court does not reach this argument for Plaintiff Shepherd.

[23] GAF makes the same argument for Indiana.  However, as this Court has found this cause of action to be barred by the Indiana PLA (*see* Section V.C.1), it does not reach this argument for Indiana.

constructive fraud);[24] *Prime Mover Capital Partners, L.P. v. Elixir Gaming Techs., Inc.*, 793 F. Supp. 2d 651, 673-74 (S.D.N.Y. 2011) ("[U]nder New York law, a plaintiff may recover for negligent misrepresentation only where the defendant owes her a fiduciary duty. Such a special relationship requires a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified.") (internal quotations omitted).  Plaintiffs in these states have not alleged that a special relationship existed with GAF.  Therefore, the Court dismisses the Ohio, Virginia, and New York Plaintiffs' negligent misrepresentation causes of action without prejudice.

Plaintiffs do dispute that a special relationship is required for a negligent misrepresentation claim under North Carolina law.  (*See* Pls.' Opp'n at 45.)  For North Carolina, Plaintiffs cite (without a pincite) to *Rowan County Board of Education v. United States Gypsum Co.*, 332 N.C. 1 (1992).  However, the *Rowan* court was analyzing a fraud, not a negligent misrepresentation, claim, and it did not discuss a special relationship.  *See id.*  GAF's case analyzing North Carolina law, on the other hand, supports that a special relationship is required.  *See Synovus Bank v. Karp*, 887 F. Supp. 2d 677, 690 (W.D.N.C. 2012) ("[T]he Magistrate Judge correctly concluded that the Defendants' allegations do not support a finding of any type of special relationship between Synovus Bank and the Defendants beyond that of the typical lender-borrower relationship. Accordingly, . . . the Defendants' negligent misrepresentation claims are dismissed.") (internal citations omitted), *aff'd in part sub nom. Synovus Bank v. Tracy*, 2015 WL 860361 (4th Cir. Mar. 2, 2015); *see also Energy Inv. Fund v. Metric Constr.*, 525 S.E.2d 441, 445 (N.C. 2000)

---

[24] "Virginia courts . . . do not recognize negligent misrepresentation as a separate cause of action from that of constructive fraud." *Baker v. Elam*, 883 F. Supp. 2d 576, 581 (E.D. Va. 2012).

("EIF's claim for negligent misrepresentation also fails in that EIF has not alleged or established a special relationship with defendants which supports standing to bring a direct claim. . . .   Absent some indication whereby defendants directly solicited EIF with the intent to induce its participation in BCH, EIF has failed to allege the existence of a legally cognizable duty of care which runs from defendants to EIF.").  As the North Carolina Plaintiffs (Robertie) have not alleged that a special relationship existed with GAF, their negligent misrepresentation cause of action is dismissed without prejudice.

For Iowa, Plaintiffs cite to *Sain v. Cedar Rapids Community School District*, 626 N.W.2d 115 (Iowa 2001).  (Pls.' Opp'n at 46.)  *Sain* supports GAF's basic proposition that a special relationship is required for a negligent misrepresentation claim under Iowa law. *See Sain*, 626 N.W.2d at 124 ("As with all negligence actions, ***an essential element*** of negligent misrepresentation is that the defendant must owe a duty of care to the plaintiff.") (emphasis added).  Instead, Plaintiffs cite to *Sain* to argue that such a duty exists where "a defendant supplied 'information' and that this information was false."  (Pls.' Opp'n at 46.) The *Sain* court, however, made clear "that this duty arises only when the information is provided by persons in the business or profession of supplying information to others."  626 N.W.2d at 124, 128-29 (finding that the duty existed for a student and his guidance counselor).  "Thus, when deciding whether the tort of negligent misrepresentation imposes a duty of care in a particular case, [Iowa courts] distinguish between those transactions where a defendant is in the business or profession of supplying information to others from those transactions that are arm's length and adversarial."  *Id.* at 124.  In reaching this decision, the *Sain* court cited to *Molo Oil Company v. River City Ford Truck Sales, Inc*. *Id.*  In that case, the court held that "if the transaction at issue took place at arm's length,

51

the plaintiff's cause of action must fail." *Molo Oil*, 578 N.W.2d 222, 227 (Iowa 1998) (refusing "to apply this rule [creating a duty] to a retailer in the business of selling and servicing its goods").

Plaintiffs have alleged no facts demonstrating that GAF was in the business of supplying information period, much less in the way contemplated by Iowa courts. Therefore, the Iowa Plaintiffs' negligent misrepresentation causes of action also will be dismissed without prejudice.

2.   <u>Failure to plead privity</u>

GAF argues that the Michigan Plaintiffs' (McGovern, Claxton, Narducci) negligent misrepresentation claims should be dismissed for lack of privity.  (*See* GAF Mot. at 46 (citing *Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 845-46 (E.D. Mich. 2010).)  *Yaldu* provides that, under Michigan law, "[t]he elements of negligent misrepresentation are: . . . (4) the defendant and plaintiff were in privity of contract . . . ."  *Id.* at 845.  Plaintiffs do not address GAF's argument.  However, with respect to similar arguments related to the implied warranty claims, Plaintiffs do not assert that any Plaintiff has alleged sufficient facts establishing privity, only that no such requirement exists.  (*See* Pls.' Opp'n at 44-45.) Therefore, because Plaintiffs have not pled that privity exists as required under Michigan law, this Court finds that the Michigan Plaintiffs' negligent misrepresentation claims also should be dismissed on this basis.

**G.   Count 24 (Fraudulent Concealment): Other Argument for Dismissal**

The parties agree that Rule 9(b) applies to this claim.  The Court initially notes that briefing by both parties on this Count was challenging.  This is particularly true because GAF intertwines its arguments against equitable tolling (which the Court has rejected as

52

premature, *see supra* Section V.A.2) with its arguments that Plaintiffs' fraudulent concealment claims fail to state a claim under Rule 9(b).  The Court is only addressing these issues at this time because several issues are core to Plaintiffs' allegations.  As this Court has previously noted, the Court will not accept abstract arguments, arguments based on analysis of New Jersey law (unless explained why relevant), and, will not hunt to try to figure out if and how Plaintiffs are opposing GAF's arguments.

At the base of Plaintiffs' disjointed opposition is that they have adequately pled "fraud by omission with particularity" and that "[w]ithout the benefit of discovery in this matter, Plaintiffs cannot specify exactly when GAF knew the Decking was defective." (Pls.' Opp'n at 19.)   The primary OAC allegations that Plaintiffs identify in support of their particularity position are the following:

> 72. The Decking's defects are latent and undetectable until they manifest. Therefore, Plaintiffs and Class members could not reasonably have discovered, even with the exercise of due diligence, that there was a defect until after the Decking had been purchased and installed. Indeed, the defect typically does not manifest itself until a year or two after installation.

> 73. But GAF knew or should have known of the Decking's defects, and that the Decking is not fit for its ordinary and intended use, is not merchantable, and fails to perform in accordance with GAF's own statements and warranties, as well as with the reasonable expectations of ordinary consumers.

> 74. And GAF knew or should have known that the Decking had the potential and tendency for swelling, expanding, warping, staining, discoloration, twisting, and shrinking.

> 75. Despite GAF's actual or constructive knowledge of the Decking's defects and problems, GAF continued to market and sell the Decking—and failed to disclose, and otherwise concealed, the Decking's inherent defects.

> 85. As discussed herein, GAF made the following representations in conjunction with the sale of its Decking, each of which were intended to (and did) convey information regarding the durability and performance of the Decking, rather than mere puffery: . . . [list of alleged representations].

88. GAF's made its representations about the Decking despite GAF's knowledge that the Decking was defective.

372. GAF took affirmative steps to prevent Plaintiffs and Class members from learning of the Decking's defects, including keeping non-public information and internal knowledge and communications secret.

Most of these allegations—and all dealing with omission—are essentially fill-in-the-blank pleading allegations.  In other words, if someone replaced "GAF" with "insert party" and "Decking" with "insert product," they could have bare-bones pleadings for any defective product.  In other contexts, this Court—with more specific allegations than those above—has held that such bare-bones pleadings do not meet Rule 8, much less Rule 9.

Plaintiffs also generally allege that "*[d]espite a <u>litany</u> of complaints from consumers like Plaintiffs* and Class Members, GAF refuses to inform purchasers, homeowners, and Class Members about the Decking's defects."  (OAC ¶ 77 (emphasis added).)  The OAC originally included twenty-five (25) Plaintiff fact sets; twenty-three (23) remain.  However, with the exception of Plaintiff McGovern, *none* of the Plaintiffs allege informing GAF of any decking issue, when they so communicated with GAF, the content of any "complaint" or other communications, or any other facts to support knowledge by GAF of any alleged defect.  Even Plaintiff McGovern alleges only that he "initially filed an action against GAF in this Court on August 21, 2014," and "[b]efore filing that case, Plaintiff submitted a pre-suit demand to Defendant."  (*Id.* ¶ 17.)  Plaintiff McGovern does not identify when he submitted the pre-suit demand or the content of that demand.  In fact, a couple of Plaintiffs' allegations above assert only that GAF "knew *or should have known*" of the alleged defect.

Paragraph 372 which simply states that "GAF took affirmative steps to prevent

Plaintiffs and Class members from learning of the Decking's defects" appears to be the heart of its omission claim. While there may be a limitation to Plaintiffs' knowledge prior to discovery, Plaintiffs must have some basis for their allegations beyond conclusory assertions that simply mimic legal elements. With this background, the Court will address the specific argument made by GAF that Plaintiffs failed to plead a special or fiduciary relationship as required by certain states.

GAF states that "[f]raudulent concealment as a cause of action in these states requires *either* an affirmative act of concealment *or* confidential, fiduciary, or other special relationship," and that Plaintiffs have alleged neither. (GAF Mot. at 45-46 n.30 (emphasis added).) As such, GAF argues that the California (Williams), Illinois (Ernst), Ohio (Burger), North Carolina (Robertie),[25] Iowa (Denton, Sheridan), Montana (Hoover & Cohen), Nebraska (Warren), Michigan (McGovern, Narducci, Claxton), Virginia (Wolcott), New York (Giovannetti), and Mississippi (Mapp)[26] Plaintiffs' fraudulent concealment claims should be dismissed. (*See id.*) Plaintiffs counter that a showing of a special relationship is not required because—as GAF acknowledges—Plaintiffs must plead *either* an affirmative act(s) of concealment *or* a special relationship; Plaintiffs do not argue that they have plead a special or fiduciary relationship for any of the Plaintiffs. (*See* Pls.' Opp'n at 20-21.) However, Plaintiffs have not sufficiently pled an affirmative act of concealment as discussed above, so they cannot defeat GAF's argument on this issue on

---

[25] The Court does not reach this argument for North Carolina Plaintiff Shepherd as his cause of action has been dismissed as time barred. *See supra* Section V.A.1.

[26] GAF also makes this argument with respect to the Indiana Plaintiff. (*See* GAF Mot. at 45 n.30.) However, as this Court has dismissed the Indiana fraudulent concealment cause of action as barred by the Indiana PLA (*see supra* Section V.C.1), it does not reach this argument.

that cursory argument alone.

Plaintiffs further argue that in "numerous states at issue" (citing to cases analyzing Illinois, South Carolina (not at issue here), and Virginia law only), that neither an affirmative misrepresentation nor a special relationship are required "so long as the defendant: (1) knows about the defect at the time of sale, (2) makes partial representations while concealing other information, or (3) enjoys a position of superior knowledge over the plaintiff." (Pls.' Opp'n at 21 & n.28.)  Plaintiffs also argue that in California, North Carolina, Iowa, Illinois, Nebraska, Ohio, New York, Montana, and Mississippi "when a manufacturer knows that it is selling a defective product, a duty to disclose that defect arises." (*Id.* at 22-24 & nn.29-35.)

Plaintiffs' cases do not support their argument that the fraudulent concealment claims in these states have been sufficiently pled for a product defect case.  The cases cited by Plaintiffs involve more specific pleadings than are present here, different postures of the cases, and/or analysis of state, not federal, pleading sufficiency; no case supports that Plaintiffs can meet their pleading burden with bald assertions simply reciting magic legal phrases.  In other words, even by their own definition, the allegations in the OAC are insufficient to state claims for fraudulent concealment in these states because Plaintiffs make nothing but conclusory allegations that GAF knew or should have known that its advertisements and/or representations were false or misleading at the time of sale.  Thus, regardless of whether an affirmative duty to disclose exists relieving them of other proofs, Plaintiffs have not pled sufficient facts to establish such a duty existed here.  Therefore, Plaintiffs' fraudulent concealment causes of action in these states will be dismissed without prejudice.

Plaintiffs did not provide opposition with respect to GAF's Michigan arguments. (*See id.*)  To state a claim for fraudulent concealment under Michigan law, Plaintiffs must plead either affirmative concealment or a fiduciary relationship.  *See First of Mich. Corp. v. Swick*, 894 F. Supp. 298, 301 (E.D. Mich. 1995)("Defendants acknowledge that fraudulent concealment requires some affirmative fraudulent act and an additional act to perpetuate the concealment; mere inaction or silence is not sufficient. Instead, defendants rely on the exception to this rule creating an affirmative duty when there is a fiduciary relationship. . . . [B]ecause there was not a fiduciary relationship between plaintiffs and defendants, mere inaction by plaintiffs is insufficient to establish fraudulent concealment.") (internal quotations and citations omitted).  Plaintiffs have not sufficiently alleged either, and, therefore, the Michigan Plaintiffs' (McGovern, Narducci, Claxton) fraudulent concealment causes of action also will be dismissed without prejudice.

Because the Court finds that Plaintiffs' pleadings are insufficient regardless of whether GAF's or Plaintiffs' view of the law is correct, the Court will not decide at this time whether a showing of a special relationship or an affirmative act of concealment is required in all the states at issue.

### H.      Count 20 (Breach of Express Warranty)

1.      <u>Failure to plead breach of the Smart Choice Limited Warranty</u>

GAF argues that all of Plaintiffs' express warranty claims fail "[t]o the extent that Plaintiffs attempt to plead a breach of the Smart Choice Limited Warranty, . . . because they have not actually pled any breach of those terms."  (GAF Mot. at 39.)

Although Plaintiffs assert that "Plaintiffs' claim for breach of [express] warranty includes . . . a claim for breach of the Limited Warranty ***offered by GAF***" (Pls.' Opp'n at

35 (emphasis added)), Plaintiffs do not plead the actual express terms of the applicable warranties, and how GAF failed to comply with those terms.  They also do not allege that they gave GAF an opportunity to repair or replace any faulty product and GAF did not do so according to the express terms of the warranty.  The only Plaintiff who alleges that he notified GAF at all—Plaintiff McGovern—does not allege any details of the communication other than that it was a "pre-suit demand."  (*See* OAC ¶ 17.)  This Court agrees with GAF that "at its core, Plaintiffs' claim regarding the Smart Choice Limited Warranty is not that GAF breached it, but that they are dissatisfied with the remedy that it provides."  (GAF Mot. at 39-40; *see also* Pls.' Opp'n at 36 (explaining how they believe the warranty coverage is inadequate).)  Plaintiffs have not identified in the OAC the warranty terms that were breached, and how they were breached.

In lieu of arguments related to the actual warranty terms, Plaintiffs make arguments that the Smart Choice Warranty is unconscionable and "fails of its essential purpose."  (*See* Pls.' Opp'n at 36-39.)  As an initial matter, in support of both of these arguments, Plaintiffs cite primarily New Jersey case law and statutes, not cases applying the relevant law. Second, Plaintiffs seem to conflate various concepts.  Even the New Jersey case cited by Plaintiffs for its unconscionability argument does not support their express warranty position because Plaintiffs have not explained how the concept of unconscionability demonstrates that their affirmative ***express*** warranty claims are sufficiently pled.  *See In re AZEK Bldg. Prods., Inc. Marketing & Sales Practices Litig.*, 82 F.Supp. 3d 608, 614, 616 (D.N.J. 2015) (holding that "Defendant correctly argues that Plaintiffs have failed adequately to plead breach of the Lifetime Limited Warranty" while finding unconscionability, on the other hand, relevant to whether Defendants could ***disclaim***

58

certain causes of action based on the terms of the warranty).  At this time, GAF has not moved to dismiss claims based on an argument that such claims are precluded by the terms of the warranty.  Therefore, aside from being improperly supported given the relevant law, Plaintiffs' unconscionability argument is unresponsive to GAF's arguments related to Plaintiffs' claims for breach of the ***express*** warranty.

With respect to Plaintiffs' failure of essential purpose argument, Plaintiffs again cite to New Jersey law in response to GAF's citation to cases applying relevant state law. (*See* Pls.' Opp'n at 38 ("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.") (citing N.J.S.A. 12A:2-719(2)).)   GAF's citations support their argument that a "warrantor in a repair or replace warranty must be provided with an opportunity to repair any defect, and no Plaintiff [here] adequately alleges providing any such opportunity, rendering the express warranty claims insufficient."  (GAF Mot. at 40 n.23.)  GAF's cases also support that in some instances, a plaintiff may be able to meet this requirement by pleading allegations to support that such an effort would be futile.  Plaintiffs have not made such an argument here, and they have not alleged any facts supporting such an argument.

The Court agrees with GAF that "[b]ecause no Plaintiff alleges GAF failed to provide the remedy promised in the Smart Choice Limited Warranty, Plaintiffs have not alleged any [express] breach of it."  (*Id.* at 41.)  Therefore, all claims based on the theory that the express warranty was breached pursuant to its terms are dismissed without prejudice.

2.   <u>Failure to plead representations that became a basis of the bargain</u>

GAF also argues that all of the Plaintiffs' express warranty claims fail because

"they do not allege that any statements outside of the Smart Choice Limited Warranty became part of the basis of the parties' bargain and thus formed express warranties."  (*Id.* at 39.)  GAF does not allege that representations can never form the basis for an express warranty claim.  Instead GAF argues that "Plaintiffs' failure to allege that they heard or saw any alleged representations and relied on them necessitates dismissal of their breach of express warranty claims."  (*Id.* at 41.)

GAF's case law (*see id.* at 41-42 n.25) supports that—at a minimum—Plaintiffs must have seen or heard the representations that they allege became a basis of the bargain. It also supports that in most, if not all, relevant states, Plaintiffs must allege that they relied on such representations or that the representations induced the purchase.  *See Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Prods. Inc.*, 2007 WL 894833, at *16 (S.D. Ohio Mar. 22, 2007) ("An affirmation of fact is part of the basis of the parties bargain if it induces the buyer to purchase the product."); *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 85 (Mo. Ct. App. 2011) ("To prove a claim for breach of express warranty in Missouri, a plaintiff must show: . . . (3) the statement of fact was a material factor inducing the buyer to purchase the goods . . . ."); *Sharp v. Tamko Roofing Prods., Inc.*, 2004 WL 2579638, at *2 (Iowa Ct. App. 2004) ("For a plaintiff to prove a breach of an express warranty based on sales representations, there must be a finding the sale would not have been made but for the representations."); *Schlenz v. John Deere Co.*, 511 F. Supp. 224, 228 (D. Mont. 1981) ("Manufacturers such as defendants create express warranties . . . if they make representations in advertising brochures that the purchaser relies on as part of the basis for the bargain."); *Dow Corning Corp. v. Weather Shield Mfg., Inc.*, 790 F. Supp. 2d 604, 611 (E.D. Mich. 2011) ("Under Michigan's version of the Uniform Commercial Code,

advertisements and promotional literature can be a part of the basis of the bargain and thus constitute express warranty where they are prepared and furnished by a seller to induce purchase of its products and the buyer relies on the representations."); *Neb. Plastics, Inc. v. Holland Colors Am., Inc.*, 2003 WL 22519410, at *18 (D. Neb. Nov. 7, 2003) ("This court has held that [s]ince an express warranty must have been made part of the basis of the bargain, it is essential that the plaintiffs prove reliance upon the warranty.") (quoting *Hillcrest Country Club v. N.D. Judds Co.*, 461 N.W.2d 55, 61 (Neb. 1990)) (internal quotations omitted); *Melton v. Ortho-McNeil Pharm., Inc.*, 2014 WL 4930673, at *3 (N.D. Ohio Oct. 1, 2014) (applying Illinois law) ("Essential to the formation of a warranty is the buyer's reliance on the representations of the seller. . . . [E]ven if the advertisement had contained an affirmation of fact or promise, it is of no consequence to the instant claims as Ms. Melton admits she did not read the advertisement, and therefore could not have relied on any statement therein."); *Assocs. of San Lazaro v. San Lazaro Park Props.*, 864 P.2d 111, 115 (Colo. 1993) ("Sellers are encouraged to warrant only that which they know they can fulfill, while buyers who in fact rely on express warranties may anticipate judicial enforcement thereof."); *Wabash Power Equip., Co. v. BTU State Line, LLC*, 2014 WL 1329411, at *7 (N.D. Ind. Mar. 31, 2014) ("As the Seventh Circuit Court of Appeals explained, describing Indiana law, [t]he buyer has the burden of establishing that both parties understood and agreed to the same thing, before an express warranty can be proven. That means that if both parties did not rely on a certain assertion or opinion to be a part of the deal, no express warranty was created.") (internal quotations omitted, alteration in original); *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 979 (C.D. Cal. 2014) ("Moreover, Plaintiffs do not allege that they read or relied on the 'marketing

brochure' before making their purchases."); *Kelleher v. Marvin Lumber & Cedar Co.*, 891 A.2d 477, 502 (N.H. 2006) ("To satisfy this requirement, a plaintiff claiming breach of express warranty based upon a representation in a catalog or brochure would have to prove, at a minimum, that he or she read, heard, saw or was otherwise aware of the representation in the catalog or brochure."); *Cavanagh v. Ford Motor Co.*, 2014 WL 2048571, at *4 (E.D.N.Y. May 19, 2014) ("A successful claim of a breach of express warranty requires proof that an express warranty existed, was breached, and that plaintiff had relied on that warranty. Where a [p]laintiff does not identify the terms of the purported warranty he claims to have relied on, any conclusory allegation . . . for breach of express warranty [must] be dismissed.") (internal citations and quotations omitted, alteration in original); *Maxwell v. Remington Arms Co., LLC*, 2014 WL 5808795, at *3 (M.D.N.C. Nov. 7, 2014) ("In determining whether a seller's affirmation or description becomes the basis of the bargain, North Carolina courts look to certain factors, including whether the buyer knew of the seller's statements.") (internal quotations omitted); *Craig v. DaimlerChrysler Corp.*, 2008 WL 2816842, at *7 (S.D. Miss. Mar. 19, 2008) ("In order to set forth a product liability claim for breach of express warranty, Plaintiffs must demonstrate that: The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product.") (internal quotations omitted).[27]

---

[27] With respect to Virginia, GAF states: "Virginia requires that the alleged breach of an express warranty proximately caused the alleged damage." (GAF Mot. at 42 n.25 (citing VA. CODE § 8.2-714.) GAF's motion provides no analysis of this provision—"Buyer's damages for breach in regard to accepted goods"—nor does it cite to any case law addressing a basis of the bargain argument under Virginia law. The Court, therefore, does not treat GAF as moving to dismiss the Virginia breach of express warranty cause of action on this basis.

Plaintiffs do not cite relevant law demonstrating that a plaintiff can state a breach of express warranty claim based on representations that they were not even aware of. (*See* Pls.' Opp'n at 39-41.) Instead, Plaintiffs make broad statements primarily supported by citations to cases analyzing New Jersey law. (*See, e.g.*, *id.* at 39 ("All affirmations of fact by the seller, description of the goods, or exhibitions of samples become part of the basis of the bargain unless good reason is shown to the contrary. *Cipollone v. Liggett Grp., Inc.*, 893 F.2d 541, 568 (3rd Cir. 1990).").) In fact, Plaintiffs seem to concede that—at a minimum—awareness of the representation is a requirement. (*See id.* at 40 ("A representation is presumed to be part of the basis of the bargain '***once the buyer has become aware of the affirmation of fact or promise***.'") (emphasis added) (quoting another case analyzing New Jersey law, *Liberty Lincoln-Mercury, Inc.*, 171 F.3d 818, 825 (3d. Cir. 1999).) And yet, as GAF notes (*see* GAF Reply at 13), Plaintiffs have failed to plead which, if any, representations that the Plaintiffs were aware of. With respect to reliance, Plaintiffs assert—without more—that "[t]o the extent that a particular state requires reliance, Plaintiffs have adequately alleged it." (Pls.' Opp'n at 40 n.42.) Such arguments improperly punt Plaintiffs' opposition responsibility to this Court.

The Court finds that Plaintiffs have not pled anything sufficient to support a benefit of the bargain argument. As an initial matter, the following Plaintiffs make no allegations ***of any kind*** with respect to representations:[28] Burger (Ohio), McGovern (Michigan), Claxton (Michigan), Kaiser (Colorado), Tuthill (Colorado), and Mapp (Mississippi).

---

[28] Robertie does not make any allegations related to representations, but also does not bring a claim for breach of express warranty. (*See* OAC ¶ 12, Count 20; ECF No. 60-2, (GAF's Checklist).)

(OAC ¶¶ 11, 17, 20, 22, 24, 31.)   Thus, these Plaintiffs' express warranty claims will be dismissed without prejudice to the extent they are based on a benefit of the bargain theory.

The following Plaintiffs make only the single cut and paste allegation that they purchased the decking based on "the representations regarding the quality of the Decking": Denton (Iowa), Hoover & Cohen (Montana), Warren (Nebraska), Ernst (Illinois), Turcheck (Colorado), Stidham (Indiana), Williams (California), Wolcott (Virginia), Khanna (New Hampshire), Giovannetti (New York), Shepherd (North Carolina), Barker (Colorado), and Megerle (Colorado).   (*Id.* ¶¶ 15-16, 18, 21, 23, 25-27, 29-30, 32, 34-35.)   Plaintiffs Ross (Missouri) and Sheridan (Iowa) allege that "[b]ased upon GAF's marketing, at the time of purchase, [they] believed that the Decking was superior to other decking boards."   (*Id.* ¶¶ 13-14.)   Plaintiff Sheridan also alleges that based on the marketing, he believed it "would require limited maintenance."   (*Id.* ¶ 14.)   Plaintiff Narducci (Michigan) alleges that he purchased the decking "based upon the quality and ease of use of the Decking."   (*Id.* ¶ 19.) Plaintiff Narducci does not identify the basis for that belief.   None of the Plaintiffs identify which representations they saw or heard, where they saw or heard them, when they saw or heard them, from whom, and whether the representations induced them to purchase the product (in those states where required).   In short, there is no indication in any of Plaintiffs' allegations what representations identified in the general allegations section became a basis of the bargain between these parties and GAF.

These allegations are inadequate to meet the basic requirements of Rule 8, and cannot be salvaged by a couple of general allegations by Plaintiffs.   (*See id.* ¶ 87 ("Plaintiffs, class members, and the builders, contractors, subcontractors, and other agents, relied on GAF's representations regarding the quality of the Decking."); *see id.* ¶ 339

("Plaintiffs, Class Members, and the builders, contractors, subcontractors, and other agents who worked for them, relied on GAF's representations regarding the quality of the Decking.").)   As this Court has made clear, even "Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."  *Iqbal*, 556 U.S. at 686-87.  Thus, these Plaintiffs' express warranty claims also will be dismissed without prejudice to the extent they are based on a benefit of the bargain theory.

3.   <u>Failure to plead notice</u>

GAF further argues that the Ohio (Burger), Michigan (Claxton, Narducci, McGovern), Illinois (Ernst), Indiana (Stidham), and New York (Giovannetti) Plaintiffs' express warranty claims also fail because they do not "allege facts showing that they provided GAF with notice of the alleged defects."  (GAF Mot. at 44 & n.27; *see also* ECF No. 63-1 at 5-6(GAF Reply Checklist).)  Plaintiffs counter that "these states all permit the filing of a complaint to constitute notice in this context."  (*See* Pls.' Opp'n at 42 & n.45.)

With respect to Illinois, the case relied on by Plaintiffs does not support their position.  In *Connick v. Suzuki Motor Company, Ltd.*, the Illinois Supreme Court held that "[o]nly a consumer plaintiff who suffers ***a personal injury*** may satisfy the section 2-607 notice requirement by filing a complaint stating a breach of warranty action against the seller."  675 N.E.2d 584, 590 (Ill. 1996) (emphasis added).   The Illinois court further held that "[t]he reason for this distinction is that where the breach has not resulted in personal injury, the UCC indicates a preference that the breach be cured without a lawsuit."  *Id.* at 590-91.  Here, the Illinois Plaintiff has not alleged any pre-suit notice.  Therefore, his breach of express warranty claim is dismissed without prejudice on this basis.

With respect to Ohio, Michigan, Indiana, and New York, the most liberal reading of Plaintiffs' cases is that notice by complaint is the unusual exception, not the rule.  And it is an exception premised on the filing of the complaint providing "reasonable" notice.  Here, Plaintiffs have alleged no facts related to this issue.  Instead all many of these Plaintiffs baldly assert is that they discovered the defect within a year prior to filing suit.  (*See* OAC ¶¶ 11-12, 14-16, 18-23, 25-27, 29-32, 34.)  Others do not even identify when they allegedly discovered the defect.  (*See id.* ¶¶ 13, 17, 24, 35.)[29]  Thus, Plaintiffs do not allege when each Plaintiff actually discovered the issue, or any other facts to support that notice was reasonable.  Plaintiffs appear to believe that their notice argument means that the mere filing of the complaint without any allegations related to notice is enough to survive a motion to dismiss.  If this were the case, then no express warranty claim could be dismissed in these states based on failure to provide notice, as every case begins with the filing of a complaint.  Plaintiffs' cases do not support such a broad assertion.  Because the Court finds that Plaintiffs' failure to make ***any*** allegations related to notice justifies dismissal without prejudice, it need not decide at this time when or if the filing of a complaint can satisfy the notice requirement in these states.

4.    Failure to plead privity

GAF also argues that the Indiana Plaintiff's (Stidham) express warranty claim should be dismissed for failure to allege privity.  (*See* GAF Mot. at 45.)  To support this argument, GAF cites to *Atkinson v. P&G-Clairol, Inc.*, which held that "vertical privity is

---

[29] Although Plaintiff McGovern does not identify when he is alleging that he discovered the defect, he does allege that "[b]y the summer of 2010"—four years prior to filing suit—he "noticed that the Decking had separated due to expansion of boards" and that the Decking "became stained with mold and mildew."  (OAC ¶ 17.)

required for claims of breach of express warranty and breach of implied warranty of fitness for a particular purpose." 813 F. Supp. 2d 1021, 1026 (N.D. Ind. 2011). Plaintiffs, on the other hand, cite to *Prairie Production, Inc. v. Agchem Div.-Pennwalt Corporation*, which held, on an issue of first impression, that "a plaintiff may recover against a manufacturer for economic loss for breach of express warranties, even though the plaintiff is not in privity with the manufacturer." 514 N.E.2d 1299, 1302-03 (Ind. Ct. App. 1987). A recent case in the Southern District of Indiana, *Ryden v. Tomberlin Automotive Group*, 2012 WL 4470266, at \*1-2 (S.D. Ind. 2012), dealt with the same arguments and cases as the parties present here. In that case, the court did not resolve the split between the holdings in these cases (*Atkinson* and *Prairie Production*). Instead, it clarified the basis for the *Prairie Production* holding. The court stated:

> In *Prairie Production*, the Indiana Court of Appeals relied on the New York case of *Randy Knitwear, Inc. v. Am. Cyanamide Co.*, 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (N.Y.1962), and held that where a manufacturer had made representations to a buyer in the chain the distribution through advertisements and product labels, and the buyer in fact relied upon those representations, the buyer could maintain a claim for breach of an express warranty. 514 N.E.2d at 1303–04; see also id. at 1304 ("[T]he seller's representation rises to the level of an express warranty only if it becomes part of the basis of the bargain."). The cases that have followed *Randy Knitwear* only allow express warranty claims where the conditions of representation and reliance are met. They do not treat the case as a general repudiation of privity, but as an exception to it.

*Id.* at \*2. The *Ryden* court then found—without resolving the dispute—that the plaintiff's allegations failed even to meet the *Prairie Production* requirements of awareness and reliance. *Id.* ("Significantly, Plaintiff does not allege that he relied on these advertisements in making his decision to buy a Vehicle, nor does he allege that he ever saw this advertisement or was aware of it. Without such allegations, Plaintiff's breach of express warranty claim does not fall within the exception to the privity requirement articulated in

*Randy Knitwear* and *Prairie Production*.").  The Court reaches the same conclusion in this

case.  Even if Plaintiffs are correct that *Prairie Production* states the appropriate rule (that

privity is not always required for express warranty claim under Indiana law), they have

failed to plead any allegations supporting that an exception to this requirement exists here.

Therefore, the Indiana Plaintiffs' express warranty cause of action will be dismissed

without prejudice on this basis.   The Court does not decide at this time whether such

allegations without more would be sufficient to state an express warranty claim under

Indiana law.

### I.        Count 21 (Breach of Implied Warranties)

#### 1.        Failure to plead not merchantable

GAF argues that in Ohio (Burger), North Carolina (Robertie, Shepherd), Montana

(Hoover & Cohen), Michigan (Narducci, Claxton, McGovern), Nebraska (Warren),

Colorado (Kaiser, Tuthill, Turcheck, Barker, Mergele), Indiana (Stidham), and Mississippi

(Mapp) "an implied warranty claim (Count 21) should be dismissed where, as here,

Plaintiffs do not sufficiently allege that the items cannot be used for their ordinary

purpose." (GAF Mot. at 42.)[30]  GAF argues—and the Court agrees—that "[h]ere, Plaintiffs

describe the 'ordinary purpose' of CrossTimbers and/or DuraLife as 'serving as exterior

home decking in high-traffic areas exposed to the elements,'" and "and at no point do

Plaintiffs allege that they are unable to use their CrossTimbers and/or DuraLife in this

---

[30] Although GAF cites cases analyzing New Jersey law for this statement (*see, e.g.*, *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 283 (D.N.J. 2011)), it provides a footnote citation to cases analyzing the law of the relevant states.  (*See* GAF Mot. at 42-43 n.26.)  Therefore, the Court will consider this argument.  The Court does not reach this argument for Illinois Plaintiff Ernst as his breach of implied warranty cause of action has been dismissed as time barred.  *See supra* Section V.A.1.

manner."  (*Id.* at 43 (quoting OAC ¶ 81).)

Plaintiffs do not challenge GAF's law, and, in fact, cite to cases analyzing New Jersey and Pennsylvania law in opposition.   (*See* Pls.' Opp'n at 41-42 (citing *In re AZEK*, 82 F. Supp. 3d at 616, and *Fleisher v. Fiber Composites, LLC*, 2012 WL 5381381, at *6-7 (E.D. Pa. Nov. 2, 2012).)  Without acknowledging the different allegations in those cases, Plaintiffs state "[t]he court found that the essential function of a deck includes aesthetic improvement of the property [which] is a quintessential fact question that should not be resolved in the context of a motion to dismiss."  (*Id.* at 41 (internal quotations omitted).) Plaintiffs further argue that "GAF's argument that Plaintiffs failed to allege that the Decking is 'not merchantable' ignores the plain text of the OAC and the reasonable inferences which may be drawn from those allegations."  (*Id.* at 42 n.44 (citing OAC ¶¶ 73, 81, 346).)  These OAC paragraphs provide:

> 73. But GAF knew or should have known of the Decking's defects, and that the Decking is not fit for its ordinary and intended use, is not merchantable, and fails to perform in accordance with GAF's own statements and warranties, as well as with the reasonable expectations of ordinary consumers.

> 81. Through these media, as well as by oral affirmations to the Plaintiffs and the general public, GAF advertised and warranted that the Decking was merchantable as exterior home decking, fit for the ordinary purpose of serving as exterior home decking in high-traffic areas exposed to the elements, and free from defects in both its materials and its workmanship.

> 346. Contrary to such implied warranties, the Decking is not of merchantable quality or fit for its intended use—it is defective and unsuitable for use as an exterior decking product.

Plaintiffs do not allege what their expectations were other than their express statement that the ordinary purpose was to "serv[e] as exterior home decking in high-traffic areas exposed to the elements."  Nor do they allege that the decking failed in this respect.

A complaint may not be amended through briefing. *See Bell v. City of Phila.*, 275 F. App'x 157, 160 (3d Cir. 2008). Because Plaintiffs have not alleged the facts that serve as the basis of their argument and have not cited relevant law on that point, the Court need not decide if such allegations would be sufficient under relevant law. Based on the OAC, Plaintiffs have not alleged that the decking is not merchantable, and, therefore, the implied warranty causes of action in these states will be dismissed without prejudice on that basis.

### 2.   Failure to plead notice

For the same reasons that the Ohio (Burger), Michigan (Narducci, Claxton, McGovern), and Indiana (Stidham) Plaintiffs'[31] express warranty claims are dismissed for lack of notice (*see supra* Section V.H.3), their implied warranty claims must also be dismissed without prejudice.

### 3.   Failure to plead privity

GAF argues that the North Carolina (Robertie, Shepherd) and Ohio (Burger) Plaintiffs'[32] implied warranty causes of action must be dismissed for failure to plead privity. (*See* GAF Mot. at 44 & n.28.) Plaintiffs argue that these states do not require privity for implied warranty claims; they do not argue that they have plead facts sufficient to support that privity exists. (*See* Pls.' Opp'n at 44.)

The Court agrees with GAF that privity is required for Plaintiffs' contract-based implied warranty causes of action in North Carolina and Ohio. *See Energy Inv. Fund v.*

---

[31] The Court does not reach this argument for Illinois Plaintiff Ernst as his breach of implied warranty cause of action has been dismissed as time barred. *See supra* Section V.A.1.

[32] The Court does not reach this argument for Illinois Plaintiff Ernst as his breach of implied warranty cause of action has been dismissed as time barred. *See supra* Section V.A.1.

*Metric Constr., Inc.*, 525 S.E.2d 441, 446 (N.C. 2000) ("[W]hen a claim is only for economic loss, . . . the general rule is that privity is required to assert a claim for breach of an implied warranty involving only economic loss."); *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1147 (Ohio 2007) ("Ohio continues to require privity as to contract claims.").[33]  Therefore, as Plaintiffs in these states have not alleged privity or losses beyond economic losses, theses causes of action will be dismissed without prejudice.

### 4.  Failure to plead an alternative design

As with the Michigan Plaintiffs' negligence causes of action, GAF argues that their breach of implied warranty causes of action should be dismissed for failure to plead an alternative feasible design.  (*See* GAF Mot. at 49-50.)  While Plaintiffs argued that the Michigan negligence causes of action do not require pleading an alternative reasonable design (this Court disagreed, *see supra* Section V.E), Plaintiffs do not make the same argument with respect to the breach of implied warranty cause of action.  In any case, under Michigan law, "[b]reach of implied warranty and negligent design are two distinct theories of recovery but involve the same elements of proof."  *Severstal N. Am., Inc. v. N. Am. Refractories, Co.*, 2009 WL 1620115, at *13 (E.D. Mich. June 9, 2009).  Thus, for the same reasons the negligence causes of action are dismissed on this basis (*see supra* Section V.E), the Michigan Plaintiffs' (McGovern, Narducci, Claxton) implied warranty causes of action also will be dismissed without prejudice.

### 5.  Duplicative of the strict liability claim

---

[33] Plaintiffs assert that Ohio has "relaxed" this rule.  (*See* Pls.' Opp'n at 44 n.47 (citing *DiCenzo v. A-Best Prods., Inc.*, 897 N.E.2d 132, 141 (Ohio 2008).)  However, the *DiCenzo* court actually stated that "in [various cases] the court gradually relaxed the long-held requirement of privity [by holding] that a breach-of-warranty claim could ***arise out of tort*** . . . ."  897 N.E.2d at 141 (emphasis added).  This is not inconsistent with the standard stated by the Ohio Supreme Court in *Curl*.

GAF argues that the Nebraska Plaintiff's (Warren) "breach of implied warranty claim . . . fails because, as a matter of Nebraska law, it is subsumed by his strict product liability claim." (GAF Mot. at 50.) The Court has dismissed the Nebraska Plaintiff's strict liability cause of action, and has dismissed the Nebraska Plaintiff's implied warranty cause of action on other grounds. Therefore, it is unnecessary to decide at this time if the implied warranty claim could exist in the absence of a viable strict liability claim.

### J.      Count 25 (Magnuson-Moss Warranty Act ("MMWA"))

Both GAF and Plaintiffs agree that "Magnuson–Moss claims based on breaches of express and implied warranties under state law depend upon [the underlying] state law claims." (Pls.' Opp'n at 52; *see also* GAF Mot. at 52.) In fact, on their argument checklist, Plaintiffs assert that they "do not oppose GAF's motion to dismiss their claims under this [Magnuson-Moss Warranty] act to the extent their claims arise from their breach of implied warranty claims in CA, IA, MO, MO [sic], NH, NY, and VA," which Plaintiffs also had not opposed dismissal of. (*See* ECF No. 61-1 at 6 (Pls.' Checklist).) Because this Court has dismissed additional state warranty claims, Plaintiffs MMWA claims based on those claims also are dismissed without prejudice.

GAF also argues that Plaintiffs' MMWA claims must be dismissed because "Plaintiffs do not allege facts showing that Plaintiffs provided any notice to GAF or any opportunity to cure the alleged defects." (GAF Mot. at 52.) "[T]he MMWA provides that no legal action can be brought under its private right of action until the warrantor is given the opportunity to cure the violation." *McGarvey v. Penske Auto. Grp., Inc.*, 2011 WL 1325210, at *8 (D.N.J. Mar. 31, 2011) (citing 15 U.S.C. § 2310(e)); *see also Greene v. BMW of N. Am.*, 2013 WL 5287314, at *5 (D.N.J. Sept. 17, 2013) (same, dismissing a

MMWA claim in an amended complaint with prejudice). Plaintiffs have not opposed this argument. In any case, Plaintiffs have pled no facts that they provided GAF an opportunity to cure the alleged defect. As noted above, the only Plaintiff who alleges that he notified GAF at all—Plaintiff McGovern—provides no details regarding the contents of the notice or whether GAF was provided an opportunity to cure the alleged defect. (*See* OAC ¶ 17.) Therefore, Plaintiffs' MMWA claims are also properly dismissed without prejudice on this basis.

### K.      Count 27 (Unjust Enrichment)

#### 1.      Failure to plead a direct benefit

GAF argues that Ohio Plaintiff's (Burger) unjust enrichment claims fails because Ohio "do[es] not recognize unjust enrichment claims for indirect purchases." (GAF Mot. at 48) (citing *Savett v. Whirlpool Corp.*, 2012 WL 3780451 (N.D. Ohio Aug. 31, 2012).) "Under Ohio law, indirect purchasers may not assert unjust enrichment claims against a defendant without establishing that the purchaser conferred a benefit on the defendant through an economic transaction." *Savett*, 2012 WL 3780451, at *7. In *Savett*, the court found that the plaintiff failed to state a claim against defendant Whirlpool for unjust enrichment because plaintiff purchased the refrigerator from Home Depot, and had not alleged any direct benefit conferred on Whirlpool. *Id.* In response, Plaintiffs cite to *Nessle v. Whirlpool Corp.*, 2008 WL 2967703 (N.D. Ohio July 25, 2008). (*See* Pls.' Opp'n at 49.) However, in *Nessle*, the parties did not dispute whether a direct benefit was conferred. *See* 2008 WL 2967703, at *6. The element at issue in that case was whether the "retention of the benefit under the circumstances . . . would be unjust . . . without payment." *Id.* As such, Plaintiffs' case does not support its argument or contradict the law supplied by GAF.

Therefore, the Ohio Plaintiff's (Burger) unjust enrichment cause of action is dismissed without prejudice.

2.     Cannot plead in the alternative

GAF argues that the North Carolina (Plaintiff Robertie),[34] Missouri (Ross), Montana (Hoover & Cohen), Nebraska (Warren), Indiana (Stidham), Mississippi (Mapp), and New York (Giovannetti) Plaintiffs' unjust enrichment causes of action fail "because those states prohibit such claims when the existence of a contract is alleged, such as the Smart Choice Limited Warranty."  (GAF Mot. at 47 & n.33 (citing to law analyzing unjust enrichment claims in these states).)  Plaintiffs, on the other hand, argue that they are permitted to plead an unjust enrichment claim in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(3).  (*See* Pls.' Opp'n at 47-48.)

GAF's citations to federal court decisions in these states support its position.  *See Wireless Commc'ns, Inc. v. Epicor Software Corp.*, 2011 WL 90238, at *7 (W.D.N.C. Jan. 11, 2011) ("Here, Wireless admits that there is a contract between itself and Epicor in the Complaint. Given the existence of an actual contract, this Court will not recognize the existence of a quasi-contract. Therefore, Wireless' unjust enrichment claim is dismissed.") (internal citations omitted); *Affordable Cmty. of Mo. v. Fed. Nat'l Mortg. Ass'n*, 714 F.3d 1069, 1077 (8th Cir. 2013) ("We also agree with the district court that Affordable's unjust enrichment claim should be dismissed. Unjust enrichment is an equitable remedy based on the concept of a quasi-contract, and a plaintiff may not recover under both an express contract and unjust enrichment.") (internal quotations and citations omitted); *Signal Peak*

---

[34] The Court does not reach this argument for North Carolina Plaintiff Shepherd as his unjust enrichment cause of action has been dismissed as time barred.  *See supra* Section V.A.1.

*Energy, LLC v. E. Mont. Minerals, Inc.*, 922 F. Supp. 2d 1142, 1149 (D. Mont. 2013) ("EMM may not maintain an unjust enrichment claim against SPE because unjust enrichment has its foundation in equity and is an obligation created by law in the *absence* of a contract.") (emphasis in original); *In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, 2008 WL 4866604, at *15 (D. Neb. Nov. 7, 2008) ("It would certainly be contrary to every correct notion of the law to permit a party to resort to an implied contract, when the parties have entered into an express agreement which remains in force."); *Schafer v. Jeld Wen Doors/IWP Custom Door Div.*, 2007 WL 3407659, at *6 (N.D. Ind. Nov. 9, 2007) ("The only reasonable inference from the Complaint is that an express or implied contract governed the Plaintiffs' purchase of the custom door unit from the Defendant. Accordingly, it would be improper to invoke the equitable theory of unjust enrichment in this case and Count V is dismissed."); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) ("[B]ecause Weisblum has not shown that his unjust enrichment claim differs from his contract and tort claims, it must be dismissed."); *Morgan Stanley Mortg. Capital Holdings, LLC v. Realty Mortg. Corp.*, 2008 WL 4279585, at *7 (S.D. Miss. Sept. 11, 2008) ("The Court finds that as Mississippi does not allow damages to be recovered for unjust enrichment in cases in which a legally binding, written contract exists between the parties, the unjust enrichment claim pleaded by Realty is not plausible on its face.").

Plaintiffs' cases, on the other hand, are not persuasive. First, they only cite to two Pennsylvania cases. (*See* Pls.' Opp'n at 47-48 (citing *Fleisher v. Fiber Composites*, 2012 WL 5381381 (E.D. Pa. Nov. 2, 2012) (analyzing Pennsylvania law), and "*Kantor*, 2015

U.S. Dist. LEXIS 486583" [35]).)   *Fleisher* is consistent with GAF's cases.   In *Fleisher*, the court stated: "plaintiffs may plead alternative theories of breach of contract and unjust enrichment *where there is any question as to the validity of [the] contract in question*." *See* 2012 WL 5381381, at *14 (emphasis added) (internal citations omitted).   In *Kantor*, on the other hand, the court allowed the unjust enrichment to be pled in the alternative to the contractual-based claims under Federal Rule of Civil Procedure 8(d)(3) even though the plaintiff conceded that "at the end of the day, both counts cannot co-exist."  2015 WL 1650049, at *7.  *Kantor* is not persuasive compared to other cases that hold that dismissal is appropriate with allegations (or the lack thereof) similar to those in this case.  Plaintiffs must point to allegations providing some basis for the unjust enrichment claim separate from their contract claims, or they must explain how the claim is truly "alternative."  They have not done so.  Here, there is no dispute that a contract exists; Plaintiffs are bringing claims based on alleged breaches of the express warranty (as well as alleged implied warranties).  Plaintiffs also have not explained how their unjust enrichment causes of action differ from their warranty causes of action. Therefore, the North Carolina (Robertie), Missouri (Ross), Montana (Hoover & Cohen), Nebraska (Warren), Indiana (Stidham), Mississippi (Mapp), and New York (Giovannetti) Plaintiffs' unjust enrichment claims will be dismissed without prejudice.

### 3.   Fails because fraud claims fail

GAF argues that "where [as here] the [Illinois] plaintiff's claim of unjust

---

[35] Plaintiffs do not provide the full case name in the opposition, and the LEXIS citation provided is incorrect.  The Court assumes that Plaintiffs are attempting to cite to *Kantor v. Hiko Energy, LLC*, 2015 WL 1650049 (2015 U.S. Dist. LEXIS 48653) (E.D. Pa. Apr. 14, 2015).

enrichment is predicated on the same allegations of fraudulent conduct that support an independent *claim* of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well."  (GAF Mot. at 47-48 (quoting *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) (alteration and emphasis in original).)  In other words, GAF argues that the Illinois Plaintiff's (Ernst) unjust enrichment cause of action fails because his fraud causes of action fail.

The case cited by Plaintiffs in opposition supports GAF's general statement of the law.  *See Aliano v. WhistlePig, LLC*, 2015 WL 2399354, at *9 (N.D. Ill. May 18, 2015) (quoting the same *Caremark* standard quoted by GAF, but not dismissing the unjust enrichment claim because the court held that the fraud claim was adequately pled).   Here, the Court has dismissed the Illinois Plaintiff's consumer protection claim and fraudulent concealment claim.  *See supra* Sections V.B.4, V.G.  Therefore, the Court will also dismiss the Illinois Plaintiff's unjust enrichment claim without prejudice on this basis.

4.   Failure to plead extraordinary circumstances

GAF argues that the Indiana Plaintiff's claim for unjust enrichment should be dismissed "because Indiana law requires a consumer to plead 'extraordinary circumstances' beyond being 'dissatisfied' with their purchase," and no such circumstances are pled here.  (GAF Mot. at 48 (quoting *Hughes v. Chattem, Inc.*, 818 F. Supp. 2d 1112, 1125 (S.D. Ind. 2011).)  The *Chattem* court held that "where [plaintiffs] fail to allege extraordinary circumstances, much less that they did not receive the benefit of their bargain, we find that an order of unjust enrichment is inappropriate."  818 F. Supp. 2d at 1125.  Plaintiffs, on the other hand, argue that Indiana law does not require "extraordinary circumstances" to state an unjust enrichment claim, and that the "pivotal

concept of unjust enrichment is the occurrence of a wrong or something unjust."  (Pls.'
Opp'n at 48-49 (quoting *Roberts v. Alcoa, Inc.*, 811 N.E.2d 466, 475 (Ind. Ct. App. 2004)
(internal quotations omitted).).  The Court finds the two statements of the law consistent;
a plaintiff must plead some wrong beyond simple dissatisfaction with the product.
Plaintiffs, however, identify no allegations in the OAC (beyond conclusory legal
assertions) with respect to the Indiana Plaintiff that they believe meet this pleading
requirement.  Therefore, the Court finds dismissal of the Indiana Plaintiff's (Stidham)
unjust enrichment claim without prejudice is also appropriate on this basis.

### L.      Count 28 (Declaratory Judgment)

In a one sentence section, GAF argues that "Plaintiffs' declaratory relief claim
(Count 28) fails . . . because a declaratory relief claim is 'not . . . a cause of action courts
may be compelled to enforce.'"  (GAF Mot. at 53 (quoting *In re AZEK*, 82 F. Supp. 3d
608, 624-25 (D.N.J. 2015).)  As an initial matter, *In re AZEK*, was addressing a claim under
the Declaratory Judgment Act ("DJA") (28 U.S.C.A. § 2201).  *See* 82 F. Supp. 3d at 624-
25; *see also* Docket No. 12-6627, ECF No. 90 (Am. Compl., Count XV ("Declaratory
Relief Pursuant to 28 U.S.C. § 2201")).  Plaintiffs respond by citing cases also analyzing
the DJA.  (*See* Pls.' Opp'n at 52-53.)  The Court notes, however, that Plaintiffs' OAC does
not specify that Count 28 is being brought under this provision.  That aside, the Court is
not persuaded by *In re AZEK* as compared to the cases cited by Plaintiffs that this claim—
pled in the alternative—need be dismissed at this time.  GAF may re-raise this issue after
the OAC has been amended, based on the clarified allegations, if any, related to this Count.

### VI.     RE-PLEADING

To the extent that this Court finds any of the OAC's allegations insufficient,

Plaintiffs "request that they be permitted leave to amend to cure any deficiencies." (Pls.' Opp'n at 53.)  As noted throughout this Opinion, where the Court has determined that a cause of action is dismissed due to pleading failures, the Court has indicated those dismissals are without prejudice to re-pleading.  However, the Court is mindful that the parties are presently briefing a motion to dismiss in a related action involving nine (9) additional Plaintiff fact sets and seven (7) additional states. (*See* ECF Nos. 64, 69.)  The Court is also mindful that GAF will no doubt move to dismiss the Amended OAC.  Therefore, given the number of causes of actions involved under numerous state laws and in the interest of judicial efficiency and party fairness, the Court provides the following guidelines for future motion to dismiss briefing:

- Page limits will be set as they were for briefing of the present motion: 55 pages for moving and opposition briefs and 20 for GAF's reply.

- Sur-replies will be disregarded unless prior permission of the Court has been granted.

- All citations that do not contain argument may be included in endnotes that will not count towards the page limit.  Parenthetical descriptions of the cases are acceptable for purposes of this guideline; textual arguments are not and must be included in the body of the brief.  Because citations included as end notes will be exempt from the page limit, the parties are limited to no more than two (2) case citations as end notes per point.  For example, all of the citations in GAF's footnote 26 in its motion would be acceptable as an exempt end note.  But GAF could not, for example, include three citations under each state heading in the exempt portion of the brief.

- For any cause of action under state law for which GAF moves for dismissal, GAF may include, in a combined separate exhibit, the elements of the cause of action, with appropriate case citation.  Again, no argument may be included in this exhibit.  This exhibit will not count towards the page limit, but may be referenced in the body of the brief.  If Plaintiffs disagree with the elements as put forward by GAF, Plaintiffs, likewise, may include an exhibit of elements that will not go to the page limit so long as no argument is included.

- The parties may also include argument checklist exhibits in the same format as submitted with the present motion.

- All case citations must contain a parenthetical identifying the law applied by the court cited, and must include pin cites.  Additionally, the Court prefers (but will not require) citation to one legal research service (if available) given the number of cases cited.

- The parties may not re-argue items that were addressed and decided herein, but may argue points that were not previously raised, that the Court treated as unmoved on, or that the Court declined to address in this Opinion.

- GAF does not need to address in its motion whether claims should be dismissed with or without prejudice.  After decision on a new motion to dismiss, if any claims are dismissed for insufficiency of the pleadings, Plaintiffs will be required to move to amend the second OAC to explain why a third OAC should be permitted. That separate motion will be subject to the standard briefing rules of this Court unless otherwise ordered by the Court.

- GAF should conform its present briefing in the related matter to this Opinion, and will be given an opportunity to re-serve its brief as ordered by Magistrate Judge Dickson.

The Court also notes that failure to dismiss certain causes of action at this time is not an indication that a particular cause of action was properly pled.  In most, if not all, cases, the causes of action that have survived were ones that GAF did not move on or that this Court treated as unmoved on.  Plaintiffs are on notice that they will not automatically get another opportunity at redo for these causes of action if they are dismissed upon a new motion to dismiss based on the amended OAC.  The Court has gone to great lengths to address the parties' pleading disputes; simple failure to respond to this Court's holdings (including applying this Court's holdings to analysis of other causes of action) will not be sufficient to avoid dismissal with prejudice.

## VII.    CONCLUSION

For the reasons set forth above, GAF's motion to dismiss is granted in part and denied in part.  Exhibit 2, attached to this Opinion, sets forth the rulings with regard to the specific causes of action.  Plaintiffs are granted leave to file a second OAC, which cures

the pleading deficiencies discussed herein, in accordance with the schedule to be set by Magistrate Judge Dickson.  An appropriate Order accompanies this Opinion.


DATED:  October 26, 2015


      _/s/ Jose L. Linares_____
JOSE L. LINARES
U.S. DISTRICT JUDGE